f 1.
REBECCA GRASSL BRADLEY, J.
Wisconsin courts have long applied a community caretaker exception to the warrant requirement under the Fourth Amendment to the United States Constitution. In this case, Kenneth M. Asboth, Jr., asks us to decide whether law enforcement officers' warrantless seizure of his car was a reasonable exercise of a bona fide community caretaker function. He also asks us to determine whether Colorado v. Bertine, 479 U.S. 367 (1987), requires officers to follow "standard criteria" when conducting a community caretaker impoundment. We hold that Bertine does not mandate adherence to standard criteria, and because we further conclude that officers reasonably effected a community caretaker impoundment of Asboth1 s car, we affirm the decision of the court of appeals.
I. BACKGROUND
f 2. Asboth was a wanted man in November 2012. He was a suspect in the armed robbery of a Beaver Dam bank, and there was an outstanding probation warrant for his arrest. When police received a tip that he was at a storage facility in Dodge County, outside the City of Beaver Dam, both the Dodge County Sheriffs Department and Beaver Dam Police responded by sending officers to the storage facility to apprehend him.
¶ 3. The sheriffs deputy arrived first and saw a person matching Asboth's description reaching into the back seat of a car parked between two storage sheds. Drawing his weapon, the deputy ordered the person to come out of the vehicle with his hands up. Asboth, *650 complying with the command, confirmed his identity after the deputy arrested him. Officers from Beaver Dam soon arrived at the storage facility, and Asboth was placed in the back seat of a squad car until they could transport him for questioning.
¶ 4. After Asboth's arrest, his car remained parked at the storage facility. None of the arresting officers asked Asboth if he could arrange to have the car moved. Although the car sat in the middle of the alley between two storage sheds, space remained available for a vehicle to maneuver around it and drive through the alley. The car, however, entirely blocked access to one storage unit, and it impeded access to several others. When the officer ran a check of the car's registration, it identified the car's owner as not Asboth but a different person with a City of Madison address.[1] Rather than abandoning the car on private property, or contacting the storage facility's owner about it, the officers chose to impound the car.
¶ 5. Both the Beaver Dam Police Department and the Dodge County Sheriffs Department had policies for officers to follow when deciding whether to impound a vehicle. The Beaver Dam policy provided:
Any officer having a vehicle in lawful custody may impound said vehicle. The officer will have the option not to impound said vehicle when there is a reasonable alternative; however, the existence of an alternative does not preclude the officer's authority to impound.
*651 The Dodge County policy provided more specific guidance:
Deputies of the Dodge County Sheriffs Department are authorized to arrange for towing of motor vehicles under the following circumstances:
When any vehicle has been left unattended upon a street or highway and is parked illegally in such a way as to constitute a definite hazard or obstruction to the normal movement of traffic;
[[Image here]]
When the driver of a vehicle has been taken into custody by a deputy, and the vehicle would thereby be left unattended;
[[Image here]]
When removal is necessary in the interest of public safety because of fire, flood, storm, snow or other emergency reasons;
[[Image here]]
Unless otherwise indicated, the deputy always has the discretion to leave the vehicle at the scene and advise the owner to make proper arrangements for removal.
¶ 6. Because the impound lot at the Dodge County Sheriffs Department was full, the officers and deputies agreed to tow the car to the Beaver Dam police station. Consistent with police department procedures, officers conducted an inventory search of the seized vehicle at the police station. The search turned up several items that the department held for safekeeping: a video game system, a cell phone, an MP3 player, keys, and an orange water bottle containing green leafy material. In the spare tire compartment *652 beneath a false floor in the trunk, officers also found a pellet gun, which resembled the handgun used in the Beaver Dam robbery.
¶ 7. The State charged Asboth with armed robbery,[2] and he filed a motion to suppress all evidence obtained from the seizure and search of the car. As-both's motion initially challenged the constitutionality of the inventory search itself. After hearing testimony from four police officers and sheriffs deputies involved with Asboth's arrest and with the seizure and search of his car, the Dodge County Circuit Court[3] denied As-both's motion. In its order denying the motion, the circuit court made findings relevant to the impoundment: " [t]he vehicle could not be left where it was and needed to be impounded"; "[t]he officers involved believed that the vehicle belonged to someone other than [Asboth]"; and "[i]t is undisputed that Beaver Dam police conducted the inventory search according to established procedures."
¶ 8. Asboth filed a motion for reconsideration. Relying on State v. Clark, 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112, Asboth argued that the officers unconstitutionally seized the car from the storage facility. Following a hearing at which Asboth supplemented the record with testimony by more officers, the circuit court denied the motion and made additional findings:
(1) Both the Dodge County Sheriffs Department and the Beaver Dam Police Department's written policies favor [ed] impoundment....
*653 (2) The vehicle was parked on another individual's property, not legally parked on a public street.
(3) The vehicle was blocking access to more than one of the business's storage lockers and impeding travel by other customers through the complex.
(4) There were valuable items in the vehicle including electronics.
(5) Defendant was arrested while in possession of the vehicle, and was actually observed reaching into the vehicle.
Asboth pled no contest, and the circuit court imposed sentence of 10 years initial confinement followed by 10 years extended supervision.
¶ 9. In the court of appeals, Asboth challenged the circuit court's denial of his suppression motion, but he limited his argument to the constitutionality of the seizure of the car. State v. Asboth, No. 2015AP2052-CR, unpublished slip op., ¶ 1 (Wis. Ct. App. Sept. 29, 2016). Specifically, Asboth argued that the warrantless seizure was unconstitutional because it was not conducted pursuant to sufficiently detailed standardized criteria or justified by a bona fide community caretaker purpose. Id. Assuming without deciding that Bertine requires law enforcement officers to follow standardized criteria when seizing a vehicle, the court of appeals concluded that the Dodge County Sheriffs Department's policy applied and authorized the seizure. Id., ¶¶ 11, 20. Turning to Asboth's community caretaker argument, the court of appeals first rebuffed Asboth's contention that an investigatory purpose negated the bona fide community caretaker justification for the seizure, then concluded that the public need to move the car outweighed Asboth's privacy interests. Id., f ¶ 24, 44. Accordingly, the court of appeals affirmed the circuit *654 court's denial of the motion to suppress. Id., f 45. Asboth petitioned this court for review, again limiting his argument to the constitutionality of the seizure, and we granted his petition.
II. STANDARD OF REVIEW
¶ 10. We review an order granting or denying a motion to suppress evidence as a question of constitutional fact, which requires a two-step analysis. State v. Matalonis, 2016 WI 7, ¶ 28, 366 Wis. 2d 443, 875 N.W.2d 567, cert. denied, 137 S. Ct. 296. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Id. (quoting State v. Robinson, 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463).
III. DISCUSSION
¶ 11. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause." Article I, § 11 of the Wisconsin Constitution likewise provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause." Because the Fourth Amendment and Article I, § 11 provide substantively identical protections, we have historically interpreted this section of the Wisconsin *655 Constitution in accordance with United States Supreme Court interpretations of the Fourth Amendment. State v. Dumstrey, 2016 WI 3, ¶ 14, 366 Wis. 2d 64, 873 N.W.2d 502 (citing State v. Arias, 2008 WI 84, ¶ 20, 311 Wis. 2d 358, 752 N.W.2d 748).
f 12. "A seizure conducted without a valid warrant is presumptively unreasonable." State v. Brereton, 2013 WI 17, ¶ 24, 345 Wis. 2d 563, 826 N.W.2d 369 (citing United States v. Ross, 456 U.S. 798, 824-25 (1982)). "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" however, "the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). This court has recognized one such exception where a law enforcement officer is "serving as a community caretaker to protect persons and property." State v. Pinkard, 2010 WI 81, ¶ 14, 327 Wis. 2d 346, 785 N.W.2d 592.
¶ 13. Specifically, law enforcement officers may conduct a warrantless seizure without violating the Fourth Amendment when performing community caretaker functions — those actions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Kramer, 2009 WI 14, ¶¶ 19-20, 315 Wis. 2d 414, 759 N.W.2d 598 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). When evaluating a claimed community caretaker justification for a warrantless search or seizure, Wisconsin courts apply a three-step test, which asks
(1) whether a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, whether *656 the police were exercising a bona fide community caretaker function; and (3) if so, whether the public interest outweighs the intrusion upon the privacy of the individual such that the community caretaker function was reasonably exercised ....
Matalonis, 366 Wis. 2d 443, ¶ 31 (quoting Pinkard, 327 Wis. 2d 346, ¶ 29).
f 14. There is no dispute that a seizure of As-both's car occurred within the meaning of the Fourth Amendment, so this case turns on the second and third steps of Wisconsin's community caretaker test. Asboth contends that the seizure satisfied neither the second nor the third steps because an overriding investigatory purpose negated the officers' bona fide community caretaker justification for moving the car, and the public interest in seizing his car did not outweigh his privacy interest in leaving it at the storage facility. Further, he insists that the seizure was not reasonable because it was not governed by standardized criteria sufficient to satisfy Bertine. We therefore consider in turn the second and third steps of the community caretaker test.
A. Bona Fide Community Caretaker Function
¶ 15. The community caretaker exception to the warrant requirement accounts for the multifaceted nature of police work. Kramer, 315 Wis. 2d 414, ¶ 32. As this court has observed, "Police officers wear many hats: criminal investigator, first aid provider, social worker, crisis intervener, family counselor, youth mentor and peacemaker, to name a few. . . . They are society's problem solvers when no other solution is apparent or available." Matalonis, 366 Wis. 2d 443, *657 ¶ 29 (quoting Ortiz v. State, 24 So. 3d 596, 607 n.5 (Fla. Dist. Ct. App. 2009) (Torpy, J., concurring and concurring specially)). Although a court assessing whether an officer acted for a bona fide community caretaker purpose "may consider [the] officer's subjective intent," this step of the test ultimately turns on whether the officer can "articulate[] an objectively reasonable basis" for exercising a community caretaker function. Pinkard, 327 Wis. 2d 346, ¶ 31 (quoting Kramer, 315 Wis. 2d 414, ¶ 36).
¶ 16. In South Dakota v. Opperman, 428 U.S. 364 (1976), the United States Supreme Court noted that "automobiles are frequently taken into police custody" by officers engaged in community caretaker functions. Id. at 368. The Court cited two non-exclusive examples of situations where police officers often take custody of vehicles: "[v]ehicle accidents," after which officers take custody of vehicles "[t]o permit the uninterrupted flow of traffic and in some circumstances to preserve evidence," and vehicles that "violate parking ordinances," "thereby jeopardizing] both the public safety and the efficient movement of vehicular traffic." Id. at 368-69. In short, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge" in the community caretaker context. Id. at 369.
¶ 17. Citing Opperman's subsequent analysis of the constitutionality of an inventory search, the primary issue in that case, Asboth asserts that the officers' interest in investigating him as a potential suspect in the bank robbery predominated over any bona fide community caretaker function they performed by moving the car. Furthermore, focusing on Opperman's examples — impoundment following an ac *658 cident and impoundment following a parking ordinance violation — Asboth argues that the officers here did not have an objectively reasonable basis to tow his car from the storage facility to the police station.
¶ 18. For multiple reasons, we conclude that the officers possessed a bona fide community caretaker justification for impounding Asboth's car. First, if left unattended, the car would have inconvenienced a private property owner and customers at the storage facility by impeding the beneficial use of the property. Cf. United States v. Brown, 787 F.2d 929, 932-33 (4th Cir. 1986) (concluding that officers "could reasonably have impounded" arrestee's vehicle "because the car could have constituted a nuisance in the area in which it was parked"). Asboth's car obstructed the alley between the storage sheds, making it difficult for larger vehicles to pass through. The car wholly or partially blocked several storage units, limiting access for customers seeking to access their stored belongings. Because the car was on a third-party's private property, any expense for removing the obstruction would have fallen to a private property owner uninvolved in the arrest. By removing the car, the officers immediately remedied a potential disruption created by Asboth's arrest at the private storage facility, thus limiting the inconvenience to the property owner and customers.
f 19. Second, because Asboth was a suspect in a crime who also allegedly violated the terms of his probation, he likely faced a lengthy detention, and the possibility of a concomitant lengthy abandonment of the car counseled in favor of its removal from the premises. See United States v. Coccia, 446 F.3d 233, 240 (1st Cir. 2006) (noting that "officers properly made *659 arrangements for the safekeeping of the [arrestee's] vehicle" when they anticipated that he "would be indisposed for an indeterminate, and potentially lengthy, period"). Impounding rather than abandoning Asboth's car protected the vehicle and its contents from potential theft or vandalism in his absence. See United States v. Kornegay, 885 F.2d 713, 716 (10th Cir. 1989) (citing potential "vandalism or theft" as one factor supporting impoundment). Indeed, the im-poundment's protective function undermines Asboth's argument that the officers could have towed the car somewhere other than the police station; his car likely would have faced greater risk of vandalism or theft if abandoned in a public place rather than on private property. Although the later-discovered valuables were not in plain view at the time the officers towed the vehicle for impoundment, Asboth no doubt would have been upset to learn that his personal property was stolen from the car — regardless of whether officers decided to abandon it at the storage facility or in some other public place.
f 20. Finally, the registered owner of the car at the time of Asboth's arrest was someone other than Asboth. With no one else immediately present claiming ownership or otherwise available to take possession of the vehicle, the possibility existed that officers would need to make arrangements to reunite the car with its registered owner. Moreover, the protective function of impoundment described above carries no less force (and perhaps more) for an absent registered owner than it would if officers knew that Asboth owned the car.
f 21. Collectively, the functions of removing an obstruction inconveniencing the property's users and protecting an arrestee's property during his detention, *660 combined with uncertainty regarding the true ownership of the vehicle, establish that the officers had a bona fide community caretaker purpose when impounding Asboth's car. Because we identify these objective justifications for the impoundment, our cases make clear that, even if the officers had an additional investigatory interest in conducting a subsequent inventory search, the officers' subjective interests do not render the warrantless seizure of the car unconstitutional. See Kramer, 315 Wis. 2d 414, ¶ 32 ("[T]he officer may have law enforcement concerns, even when the officer has an objectively reasonable basis for performing a community caretaker function."). Consequently, we now proceed to the third step of the community caretaker test and assess the reasonableness of the seizure of Asboth's car.
B. Reasonableness of the Seizure
1. Standard Criteria
¶ 22. Before we consider the public interest in the impoundment along with Asboth's competing privacy interest, we first address Asboth's argument that the seizure of his car was unreasonable because it was not impounded according to standard criteria. In particular, he contends that in Bertine the United States Supreme Court established that an impoundment will be constitutionally valid only if governed by "standard criteria" set forth in law enforcement procedures. See Bertine, 479 U.S. at 375.
¶ 23. Asboth's argument turns on language at the end of the Bertine opinion. Although Bertine generally focused on the constitutionality of an inventory search of Bertine's van, the Court concluded by ad *661 dressing Bertine's argument that "the inventory search of his van was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place." 479 U.S. at 375. Rejecting Bertine's argument, the Supreme Court explained: "Nothing in Opperman or [Illinois v. Lafayette, 462 U.S. 640 (1983),] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. (emphasis added).
¶ 24. A split exists among the federal courts of appeals regarding Bertine's impact on impoundments by officers performing community caretaker functions. Several circuits agree with Asboth, to varying degrees, that law enforcement officers may constitutionally perform a warrantless community caretaker impoundment only if standard criteria minimize the exercise of their discretion. See United States v. Sanders, 796 F.3d 1241, 1248 (10th Cir. 2015) ("[I] impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale."); Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005) ("The decision to impound must be guided by conditions which 'circumscribe the discretion of individual officers' in a way that furthers the caretaking purpose." (quoting Bertine, 479 U.S. at 376 n.7)); United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) ("Some degree of'standardized criteria' or 'established routine' must regulate these police actions . . . ."); United States v. Duguay, 93 F.3d 346, 351 (7th Cir. 1996) *662 ("Among those criteria which must be standardized are the circumstances in which a car may be impounded.").[4] Similarly, the District of Columbia Circuit has held that, "if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment." United States v. Proctor, 489 F.3d 1348, 1349 (D.C. Cir. 2007).
¶ 25. In contrast, three federal circuits do not afford dispositive weight to the existence of standardized criteria or to law enforcement officers' adherence thereto, instead treating such criteria as, at most, one factor to consider when assessing the Fourth Amendment reasonableness of a warrantless community caretaker impoundment.[5] The Fifth Circuit flatly rejects any need to consider standardized criteria as part of a reasonableness analysis. See United States v. McKinnon, 681 F.3d 203, 208 (5th Cir. 2012) ("Since Opperman and Bertine, we have focused our inquiry on the reasonableness of the vehicle impoundment for a community caretaking purpose without reference to *663 any standardized criteria."). The Third Circuit has expressly recognized that a law enforcement officer's "decision to impound a vehicle contrary to standardized procedures or even in the absence of a standardized procedure should not be a per se violation of the Fourth Amendment." United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008).
¶ 26. Most persuasively, the First Circuit explained in United States v. Coccia, 446 F.3d 233 (1st Cir. 2006), its reasons for "reading] Bertine to indicate that an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment." Id. at 238. After noting the established principle that "impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances," the court added that Fourth Amendment "reasonableness analysis does not hinge solely on any particular factor." Id. at 239. Like any other factor, standard criteria do not provide "the sine qua non of a reasonable impound decision":
Virtually by definition, the need for police to function as community caretakers arises fortuitously, when unexpected circumstances present some transient hazard which must be dealt with on the spot. The police cannot sensibly be expected to have developed, in advance, standard protocols running the entire gamut of possible eventualities. Rather, they must be free to follow "sound police procedure," that is to choose freely among the available options, so long as the option chosen is within the universe of reasonable choices. Where ... the police have solid, non-investigatory reasons for impounding a car, there is no need for them to show that they followed explicit criteria in deciding to impound, as long as the decision was reasonable.
*664 Id. (quoting United States v. Rodriguez-Morales, 929 F.2d 780, 787 (1st Cir. 1991)). The First Circuit then proceeded to assess the reasonableness of the challenged impoundment. Id. at 239-41.
¶ 27. We agree with the First, Third, and Fifth Circuits that in cases involving warrantless community caretaker impoundments the fundamental question is the reasonableness of the seizure. Accordingly, we hold that the absence of standard criteria does not by default render a warrantless community caretaker impoundment unconstitutional under the Fourth Amendment reasonableness standard. Nor does law enforcement officers' lack of adherence to standard criteria, if they exist, automatically render such im-poundments unconstitutional.
¶ 28. The absence of a standard criteria requirement does not, as Asboth suggests, imbue law enforcement officers with "uncontrolled" discretion to impound vehicles at will as a pretext for conducting investigatory inventory searches. As the First Circuit observed in Coccia, under the reasonableness standard, "a police officer's discretion to impound a car is sufficiently cabined by the requirement that the decision to impound be based, at least in part, on a reasonable community caretaking concern and not exclusively on 'the suspicion of criminal activity.'" Coccia, 446 F.3d at 239 (quoting Bertine, 479 U.S. at 375). The second step of Wisconsin's community caretaker test requires law enforcement officers to establish that the warrantless impoundment occurred pursuant to a bona fide community caretaker purpose. Far from leaving officers with unlimited discretion to impound, Wisconsin's test authorizes law enforcement *665 officers to conduct such warrantless seizures only if they have "an objectively reasonable basis for performing a community caretaker function." Kramer, 315 Wis. 2d 414, ¶ 32.
¶ 29. Finally, our conclusion that Bertine does not mandate adoption of or adherence to standard impoundment criteria for all circumstances should not discourage law enforcement agencies from developing general impoundment procedures. "[A]doption of a standardized impoundment procedure . . . supplies a methodology by which reasonableness can be judged and tends to ensure that the police will not make arbitrary decisions in determining which vehicles to impound." Smith, 522 F.3d at 312. Indeed, adherence to sufficiently detailed standard criteria can enhance the reasonableness of an impoundment by limiting the exercise of discretion and encouraging compliant officers to identify and pursue the least-intrusive means of performing the community caretaker function. See United States v. Sharpe, 470 U.S. 675, 687 (1985) (noting that courts assessing law enforcement officers' actions must ask "not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it"). As we discuss further below, a Wisconsin court may consider the existence of, and officers' adherence to, standard criteria as a relevant factor when assessing the reasonableness of a community caretaker seizure.[6]
*666 2. Reasonableness Inquiry
f 30. Under the third step of Wisconsin's community caretaker test, we evaluate the reasonableness of the law enforcement officer's exercise of a bona fide community caretaker function by "balancing [the] public interest or need that is furthered by the officer's conduct against the degree of and nature of the restriction upon the liberty interest of the citizen." Kramer, 315 Wis. 2d 414, ¶ 40. We generally consider four factors:
(1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.
Id., ¶ 41 (quoting State v. Kelsey C.R., 2001 WI 54, ¶ 36, 243 Wis. 2d 422, 626 N.W.2d 777).
f 31. Taking the third factor first, we note that evaluation of a car's impoundment necessarily involves an automobile. This factor enters the analysis because "[i]n some situations a citizen has a lesser expectation of privacy in an automobile." State v. Anderson, 142 Wis. 2d 162, 169 n.4, 417 N.W.2d 411 (Ct. App. 1987) (citing New York v. Class, 475 U.S. 106, 112-13 (1986)). Although many of our recent community caretaker cases have raised questions regarding the appropriate scope of warrantless searches of homes, see, e.g., Matalonis, 366 Wis. 2d 443, ¶ 2; Pinkard, 327 Wis. 2d 346, ¶ 1, this case involved Asboth's lesser privacy interest in his car. Therefore, *667 law enforcement officers impounding a vehicle as community caretakers need not demonstrate the same extraordinary public interest necessary to justify a warrantless community caretaker entry into the home. See Pinkard, 327 Wis. 2d 346, ¶ 56 (observing that, as compared to an automobile, "one has a heightened privacy interest in preventing intrusions into one's home").
¶ 32. Turning to the public interest advanced by the impoundment, we circle back to the effect of Asboth's arrest on the storage facility's owner and customers: The public has a significant interest in law enforcement officers seizing from private property a vehicle that, if left unattended, would inconvenience the property's owner and users by impeding beneficial use of the property and creating a potential hazard— particularly when the officers are in lawful custody of the car. See Brown, 787 F.2d 929, 932-33. One of this court's decisions approving limited warrantless home entry by officers performing a community caretaker function specifically contemplates the possibility of officers acting for the similar purpose of abating a nuisance. See Pinkard, 327 Wis. 2d 346, ¶ 20 n.6 (quoting with approval United States v. Rohrig, 98 F.3d 1506, 1522-23 (6th Cir. 1996), which held that "officers' 'failure to obtain a warrant [did] not render that entry unlawful' where officers entered defendant's home to 'abat[e] an ongoing nuisance by quelling loud and disruptive noise'" (alterations in original)). Although we reserve judgment on such a home-entry question for a future case, we do not hesitate to recognize that, even in the absence of the exigencies that often accompany community caretaker actions, the law enforcement officers here served a legitimate *668 public interest by impounding an unattended vehicle that inconvenienced a private business and its customers and created a hazard by obstructing vehicle traffic through the storage facility.
¶ 33. The circumstances surrounding the im-poundment also reflect the seizure's reasonableness. If abandoned by the officers, the car would have intruded on private property owned by a third party who had nothing to do with the arrest. And because Asboth was already under arrest at the time of the impoundment, officers did not make an improperly coercive show of authority to effect the seizure. See Kramer, 315 Wis. 2d 414, ¶ 43. To the contrary, the seizure actually complied with the terms of both the Beaver Dam and the Dodge County procedures governing impoundments.[7] The Beaver Dam policy permitted officers to impound a vehicle held "in lawful custody," and the officers took possession of the car after lawfully arresting Asboth. Additionally, the policy permitted officers to decide against impoundment if a "reasonable alternative" existed, but there was no sensible alternative available here. Providing more targeted guidance, the Dodge County policy authorized deputies to tow a vehicle "[w]hen the driver of a vehicle has been taken into custody by a deputy, and the vehicle would thereby be left unattended." Again, officers lawfully arrested As-both, and it was reasonable under the circumstances to infer that the person alone with the vehicle at the storage facility was its driver. The fact that the seizure did actually comply with the policies of the acting law enforcement agencies indicates that this impound *669 ment was not an arbitrary decision but a reasonable exercise of discretion. See Smith, 522 F.3d at 312.
¶ 34. Notably, the fact that both policies actually cabined the officers' exercise of discretion also indicates that the officers acted reasonably when seizing Asboth's car. In Clark, the court of appeals disapproved of a policy permitting officers to tow a vehicle if "[the] vehicle is to be towed and the owner/driver is unable to authorize a tow." 265 Wis. 2d 557, ¶ 6. The court of appeals recognized that this policy was "wholly unhelpful" because it "offer[ed] no insight into why or when a vehicle may be seized," instead essentially "stat[ing] that 'a vehicle is to be towed for safekeeping when a vehicle is to be towed.' " Id., ¶ 15. Here, the Beaver Dam and Dodge County policies avoided such circular reasoning by limiting impoundment to situations where officers had custody of, respectively, the vehicle itself or its driver. Rather than allowing officers to impound a vehicle at will any time the vehicle's driver was unavailable, as the policy in Clark authorized, both policies in this case permitted impoundment only as a natural consequence of law enforcement action that would otherwise result in the vehicle's abandonment.
¶ 35. Finally, the lack of realistic alternatives to impoundment further reinforces the reasonableness of the seizure. Asboth was alone at the storage facility, so he did not have a companion who could immediately take possession of the car. Admittedly, the officers did not offer Asboth the opportunity to make arrangements for moving his car after his arrest, but nothing required them to do so. See United States v. Arrocha, 713 F.3d 1159, 1164 (8th Cir. 2013) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person *670 to pick up his car to avoid impoundment and inventory." (quoting United States v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994), which cited Bertine, 479 U.S. at 372)); see also Rodriguez-Morales, 929 F.2d at 786. In fact, given the uncertainty arising from the fact that Asboth was not the car's registered owner, taking possession of the car to investigate its ownership may have been more reasonable than outright returning the car to Asboth.[8]
¶ 36. Considering all of these factors together, we conclude that law enforcement's removal of an unattended car that would otherwise create a potential hazard while also inconveniencing owners and users of private property[9] outweighed Asboth's lesser privacy interest in that car. Because the officers advanced that public interest in pursuit of a bona fide community *671 caretaker function, we hold that the warrantless seizure of Asboth's car after his arrest was constitutionally reasonable under the Fourth Amendment.
IV. CONCLUSION
¶ 37. "The touchstone of the Fourth Amendment is reasonableness." State v. Tullberg, 2014 WI 134, ¶ 29, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)). Applying Wisconsin's test for the community caretaker exception to the Fourth Amendment's warrant requirement, we conclude that law enforcement officers acted reasonably when seizing Asboth's vehicle for impoundment. Although we conclude that the officers here complied with both relevant departmental impoundment policies, we also hold that Bertine does not mandate such adherence to satisfy the Fourth Amendment's reasonableness standard. Accordingly, we affirm the decision of the court of appeals.
By the Court. — The decision of the court of appeals is affirmed.

 Subsequent investigation revealed that the registered owner sold the car to Asboth, but neither Asboth nor the former owner notified the Department of Transportation of the transfer. Because of this omission, the officers did not know at the time of the arrest that Asboth actually owned the car.

 See Wis. Stat. § 943.32(l)(b) and (2), § 939.50(3)(c), and § 939.62(l)(c) (2015-16).

 The Honorable John R. Storck, presiding.

 See also People v. Torres, 116 Cal. Rptr. 3d 48, 56 (Ct. App. 2010); Patty v. State, 768 So. 2d 1126, 1127 (Fla. Dist. Ct. App. 2000); State v. Weaver, 900 P.2d 196, 199 (Idaho 1995); People v. Ferris, 9 N.E.3d 1126, 1137 (Ill. App. Ct. 2014); Fair v. State, 627 N.E.2d 427,433 (Ind. 1993); State v. Huisman, 544 N.W.2d 433, 437 (Iowa 1996); State v. Fox, 2017 ME 52, ¶¶ 23-26,157 A.3d 778; Commonwealth v. Oliveira, 47 N.E.3d 395, 398 (Mass. 2016); People v. Toohey, 475 N.W.2d 16, 22-23 (Mich. 1991); State v. Robb, 605 N.W.2d 96, 104 (Minn. 2000); State v. Milliorn, 794 S.W.2d 181, 186 (Mo. 1990) (en banc); People v. O'Connell, 591 N.Y.S.2d 641, 642 (App. Div. 1992); State v. O'Neill, 2015-Ohio-815, ¶ 39, 29 N.E.3d 365 (Ct. App., 3d Dist.); McGaughey v. State, 2001 OK CR 33, ¶ 44, 37 P.3d 130.

 See also People v. Shafrir, 107 Cal. Rptr. 3d 721, 721-28 (Ct. App. 2010); Cannon v. State, 601 So. 2d 1112, 1115-16 (Ala. Crim. App. 1992).

 Although in this case we discuss the standard impoundment criteria while assessing the reasonableness of the seizure, nothing in this opinion forecloses Wisconsin courts from considering officers' adherence to standard criteria when determining whether officers exercised a bona fide community caretaker function.

 Because we conclude that the seizure complied with both departments' impoundment procedures, we need not decide which procedures actually governed.

 The clear absence of feasible alternatives to impounding Asboth's car further distinguishes this case from State v. Clark, 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112, in which the court of appeals also held that the public interest in towing an unlocked vehicle from the Milwaukee streets did not outweigh the intrusion into the owner's privacy. Id., ¶ 27. An officer investigating shots fired in the area ordered the legally parked but unlocked vehicle towed "to ensure that the vehicle itself and any property inside the vehicle would not be stolen." Id., ¶ 23. The court of appeals held that the community caretaker exception did not apply because the officer could have "(1) locked the vehicle and walked away; [or] (2) attempted to contact the owners of the vehicle in light of his belief that the vehicle or its contents may be stolen." Id., ¶ 27.

 The array of factors demonstrating the reasonableness of the officers' decision to impound Asboth's car defeats any argument that this opinion delineates a per se rule "justifying] the seizure of every vehicle after its driver has been arrested." Dissent, ¶ 76. As with any warrantless community caretaker search or seizure, law enforcement officers acting as bona fide community caretakers may impound an arrested person's vehicle without a warrant only if the facts establish a *671 countervailing public interest in conducting the seizure that outweighs any infringement on the arrested person's liberty interest.