COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1774-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF3861

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ALFONSO LORENZO BROOKS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Kessler, Gundrum and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. On August 28, 2015, Alfonso Lorenzo Brooks was charged with one count of being a felon in possession of a firearm. According to the criminal complaint, on August 24, 2015, Milwaukee County Sheriff's Department Deputies Dean Zirzow and Travis Thompson witnessed a vehicle travelling at approximately sixty-five to seventy miles-per-hour in a fifty miles-per-hour zone. The deputies conducted a traffic stop. Brooks, the driver, was the sole occupant of the vehicle. Upon checking Brooks's driver's license, the deputies discovered that Brooks was operating with a suspended driver's license and informed him that the vehicle would have to be towed because there were no other drivers present. The deputies also informed Brooks that they would conduct an inventory search of the vehicle. During the search, the deputies retrieved a firearm from the trunk of the vehicle. The deputies were aware that Brooks was a convicted felon. Brooks was subsequently arrested and charged.

¶2 Brooks filed a motion to suppress evidence retrieved from the inventory search arguing that the firearm was obtained as a result of an illegal search and an improper exercise of the deputies' community caretaker function. Both deputies and Brooks testified at the hearing.

¶3 Zirzow testified that he initially pulled Brooks over for "unreasonable and imprudent speed." After discovering that Brooks's license was suspended, Zirzow informed Brooks that the car would have to be towed because there were no other drivers present and that the deputies would be conducting an inventory search of the vehicle. Zirzow explained that inventory searches allow valuable items to be withdrawn from the vehicle prior to the tow. Brooks asked Zirzow if his girlfriend could pick the car up, however, Zirzow explained that per the sheriff's department's policy, other vehicles were not allowed on the scene and that a vehicle must be towed if no other valid drivers are present. Zirzow

2

informed Brooks that he was free to leave during the inventory search, but encouraged him to stay on the scene until the tow truck arrived. Zirzow spoke with Brooks while Thompson conducted the search. Thompson indicated to Zirzow that he found a gun in the trunk of the car, which "changed the circumstance of the events." The deputies ran a criminal history on Brooks and subsequently arrested him for being a felon in possession of a firearm.

¶4     Brooks testified that after Zirzow told him the car would be towed, Brooks informed Zirzow that he did not understand the purpose of the tow because the vehicle was not a road hazard and was not violating any parking ordinances. Brooks testified that Zirzow told him it was policy.

¶5     Thompson testified that inventory searches involve searching each part of the vehicle to both allow drivers the opportunity to take anything they need from the car and to protect the sheriff's department from liability.

¶6     The circuit court denied Brooks's motion to suppress, finding that Brooks was properly stopped for speeding and that the deputies followed their protocol. Brooks subsequently pled guilty to being a felon in possession of a firearm and was sentenced to thirty-seven months of initial confinement and thirty months of extended supervision.

¶7     Brooks filed a postconviction motion for relief, arguing that the search and tow of the vehicle "was an improper exercise of law enforcement's community caretaker function because the vehicle was lawfully parked and not obstructing traffic." The motion also argued that defense counsel was ineffective for "failing to submit additional evidence showing that the Sheriff's Department's written policies and procedure did not authorize searching and towing Mr. Brooks'

car." The postconviction court denied the motion without a hearing. This appeal follows.

## DISCUSSION

¶8 On appeal, Brooks raises the same issues raised in his postconviction motion.

**Standard of Review**

¶9 "When reviewing the denial of a motion to suppress, we will uphold the circuit court's findings of fact unless clearly erroneous." *See* ***State v. Maddix***, 2013 WI App 64, ¶12, 348 Wis. 2d 179, 831 N.W.2d 778. Applying constitutional principles to the facts, however, is a question of law that we review *de novo*. *See* ***id.*** Accordingly, we will "independently review whether an officer's community caretaker function satisfies the requirements of the Fourth Amendment and Article I, Section 11 of the federal and state Constitutions." *See* ***id.*** (citation omitted).

**Community Caretaker Function**

¶10 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect the right to be free from unreasonable searches. ***State v. Dearborn***, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. A warrantless search is *per se* unreasonable unless it falls within a clearly delineated exception. ***State v. Artic***, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430.

¶11 One such exception is that "a police officer serving as a community caretaker to protect persons and property may be constitutionally permitted to

perform warrantless searches and seizures." ***State v. Pinkard***, 2010 WI 81, ¶14, 327 Wis. 2d 346, 785 N.W.2d 592. An officer's community caretaker function is distinct from the officer's law enforcement function, which is the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. ***State v. Matalonis***, 2016 WI 7, ¶30, 366 Wis. 2d 443, 875 N.W.2d 567.

¶12 When evaluating a "claimed community caretaker justification for a warrantless search or seizure," we apply a three-step test which asks:

> (1) whether a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, whether the police were exercising a bona fide community caretaker function; and (3) if so, whether the public interest outweighs the intrusion upon the privacy of the individual such that the community caretaker function was reasonably exercised[.]

*See* ***State v. Asboth***, 2017 WI 76, ¶13, 376 Wis. 2d 644, 898 N.W.2d 541 (citation omitted).

¶13 Both parties rely on our supreme court's decision in ***Asboth*** to support their positions. In that case, police and sheriff's deputies responded to a tip that Asboth, wanted for the armed robbery of a Beaver Dam bank, was at a storage facility. ***Id.***, ¶2. Asboth was arrested and placed in the back of a squad car. ***Id.***, ¶3. Asboth's car remained parked at the storage facility in the middle of an alley and between two storage sheds, completely blocking the entrance to one shed, impeding the entrance to others, but allowing other vehicles to drive through the alley. ***Id.***, ¶4. Officers discovered that the car was not registered to Asboth and ultimately chose to impound the car. ***Id.*** During an inventory search of the vehicle, officers found the weapon used to commit the armed robbery of the Beaver Dam bank. ***Id.***, ¶6. Asboth moved to suppress the evidence, challenging the constitutionality of the inventory search. ***Id.***, ¶7. The motion was denied. ***Id.***

Asboth then filed a motion for reconsideration arguing that officers unconstitutionally seized the vehicle from the storage facility. *Id.*, ¶8. The motion was denied. *Id.* Asboth ultimately pled no contest to the charge. *Id.*

¶14    Asboth appealed, arguing that the officers were not acting in a bona fide community caretaker function and that their decision to impound his vehicle failed to comply with their internal policy regarding the towing of vehicles. *Id.*, ¶22. Ultimately, the supreme court concluded "that the officers possessed a bona fide community caretaker justification" for numerous reasons. *See id.*, ¶18. The court also concluded "that the absence of standard criteria does not by default render a warrantless community caretaker impoundment unconstitutional under the Fourth Amendment reasonableness standard. Nor does law enforcement officers' lack of adherence to standard criteria, if they exist, automatically render such impoundments unconstitutional." *Id.*, ¶27.

¶15    Here, Brooks contends that unlike the facts in *Asboth*, his car was not illegally parked or obstructing traffic in any way, he was not a suspect in a crime, and his car was registered to his girlfriend, who was available to immediately retrieve the vehicle. Accordingly, Brooks contends that the deputies were not exercising a bona fide community caretaker function. He also argues that even if the deputies were exercising a community caretaker function, "it was not reasonably exercised in light of the public interest in towing Mr. Brooks' car when balanced against the intrusion that would have on his privacy interest."

¶16    While we agree with Brooks that *Asboth* is controlling, we disagree with his argument. Brooks was initially stopped for speeding and pulled over in a mixed commercial and residential area. Brooks did not have a valid driver's license, he was not the registered owner of the vehicle, and there were no other

drivers present to drive the vehicle away from the scene. Zirzow testified that he did not permit Brooks to call his girlfriend to retrieve the vehicle because other vehicles were not allowed on the scene for officer safety purposes. As the State noted, "[t]here was no way for police to anticipate when Brooks' driving privileges would be restored and he, or someone else, would be able to collect the car." Whether the car was legally parked, as Brooks contends, does not change the totality of the circumstances. We conclude that the deputies were exercising a bona fide community caretaker role when they impounded Brooks's vehicle.

¶17 We also conclude that the deputies reasonably exercised their community caretaker function in towing Brooks's car and did not violate his privacy interests. We "evaluate the reasonableness of the law enforcement officer's exercise of a bona fide community caretaker function by 'balancing [the] public interest or need that is furthered by the officer's conduct against the degree of and nature of the restriction upon the liberty interest of the citizen.'" *See id.*, ¶30 (citation omitted; brackets in *Asboth*). In doing so, we generally consider four factors:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

*See id.* (citations omitted).

¶18 First, the public has an interest in officer safety. Zirzow testified that according to his department's policy, he was not allowed to permit Brooks to arrange for someone else to come to the scene to drive the car away. He stated that officer safety is a concern in such situations. The State noted that officers

7

"ha[d] no way of knowing whether [an alternate driver] would come alone, … would be coming armed, or … was being called to actually retrieve the vehicle instead of to help the person stopped escape or attack the police."

¶19    Second, the circumstances surrounding the seizure support the conclusion that the seizure was reasonable. The deputies did not use force. They told Brooks that he was free to leave during the inventory search. Zirzow testified that the discovery of the gun "changed the circumstances." Though Brooks contends that the circumstances of the seizure violated the sheriff's department's own internal policy, the court in **Asboth** noted that the deputies were not required to abide by a specific policy in rendering their decision to tow the vehicle. *See id.*, ¶¶27-28 ("Nor does law enforcement officers' lack of adherence to standard criteria, if they exist, automatically render such impoundments unconstitutional.").

¶20    Finally, the record does not support Brooks's argument that reasonable alternatives were available. Brooks was alone in the vehicle, he did not own the vehicle, and neither the owner nor another driver were present to drive the vehicle away. While Brooks is correct that the deputies could have allowed his girlfriend to pick up the car at a later time, the Fourth Amendment did not require them to do so. *See id.*, ¶35. Leaving the vehicle on the side of the road for an indeterminate amount of time could invite theft and vandalism, which the act of impounding attempts to avoid.[1]

---

[1] Brooks also contends that his defense counsel was ineffective. Because we conclude that the deputies acted in their capacity as community caretakers and because we conclude that they did not violate Brooks's privacy interests, we also conclude that Brooks's counsel was not ineffective. *See* **State v. Toliver**, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (counsel is not ineffective for failing to make meritless arguments).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.