COURT OF APPEALS
DECISION
DATED AND FILED

March 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1919-CR**

Cir. Ct. No. **2022CF725**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

DONTAY J. WASHINGTON,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   The State appeals from an order granting Dontay J. Washington's motion to suppress evidence obtained following the warrantless entry into his friend's apartment.  We affirm.

## I. BACKGROUND

¶2    In April 2022, shortly after 1:00 a.m., police were dispatched to an apartment in Brookfield after a neighbor called 911 to report a potential domestic dispute.   According to an officer's testimony at the suppression hearing, the neighbor reportedly informed the 911 dispatcher that there had been "yelling, banging, someone saying ow, and [the neighbor] had attempted to knock on the door themselves, but the arguing inside was so loud that nobody came to the door so they left and then called 9-1-1."  Police arrived a few minutes later and located the apartment but did not hear anything coming from the apartment at all—no screaming, yelling, nothing.  Police knocked on the door for about one minute, knocking five times with pauses in between each knocking.  The only noise they heard was a dog barking, which began after they had knocked multiple times.  After the fifth knock, F.S.,[1] who resided in the apartment, opened the door.  As soon as the door was open, the first officer, Austin Haase, stepped into F.S.'s apartment.

¶3    Prior to entering the apartment, the officers did not ask F.S. if she was in need of aid, they did not ask her if she was injured, and they did not observe any injuries on her.  They did not initially see anyone else in the apartment, and they did not see or hear anything that indicated there was or had been a recent domestic disturbance in her apartment. The only question police asked was whether someone

---

[1] We use initials to protect the individual's privacy.  *See* WIS. STAT. RULE 809.81(8) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

called 911, but they did not wait for F.S. to respond before stepping into her apartment. When officers stepped into the apartment, F.S. stepped back out of their way. It is undisputed that F.S. did not verbally invite the officers to step in, nor did the officers ask for her consent before doing so.

¶4 When the officers entered the apartment and began to perform a protective sweep, they found Washington hiding in a bathroom in the lofted area of the apartment. They also saw what appeared to be illegal drugs in plain view inside the apartment, and the substances were later confirmed to be fentanyl and cocaine. The State charged Washington with two counts of possession with intent to deliver and one count of obstruction.[2] Washington filed a motion seeking to suppress on the basis that the initial entry into the apartment was unconstitutional under article 1, section 11 of the Wisconsin Constitution and the Fourth Amendment to the United States Constitution.[3]

¶5 The State opposed Washington's motion, arguing that either the emergency aid or consent exceptions to the Fourth Amendment applied.[4] The circuit court held an evidentiary hearing during which two of the officers testified. At the conclusion of the hearing, the circuit court found: (1) police responded to F.S.'s apartment in response to a third party's 911 report of a potential domestic

_____

[2] Washington initially told officers that his name was Lorenzo.

[3] WIS. CONST. art. I, § 11; U.S. CONST. amend. IV.

[4] In its circuit court brief opposing the suppression motion, the State also asserted that Washington lacked standing to challenge the entry. However, the State abandoned the standing challenge at the evidentiary hearing. The circuit court found that the State elected to not challenge standing and that in any event, Washington had standing because he was an overnight guest in his friend's apartment. The State does not raise this issue on appeal, and we therefore do not address it.

disturbance; (2) when police entered the apartment building just after 1:00 a.m., "there [was] no noise coming from the building"; (3) when police arrived outside F.S.'s apartment, there was "no noise either"—"nothing coming from the apartment"; and (4) the officers knocked on the door "I think three times loudly."[5]

¶6      The circuit court then addressed the critical point when F.S. opened the door and found: (1) "there [were] at least three officers at the door"; (2) as soon as F.S. opened the door, Officer Haase (or another officer) stepped into the apartment; (3) the officer who stepped in was a tall, big person; (4) F.S. was "at the edge of the door," and as the officer walked into the apartment, "she move[d] back"; (5) as the officer passed her, "that's when the conversation or the statement was about a 911 call"; and (6) at that point, F.S. told the officers that her television broke and offered to show the police and started walking toward the bedroom, inviting them to come and see.[6]  It further found that the officers were "immediately moving in" to the apartment as soon as F.S. opened the door—"there wasn't a second of hesitation."

¶7      With respect to whether the emergency aid exception applied, the circuit court concluded it did not because there was not "any emergency depicted whatsoever[.]"  It found that although the 911 caller described a loud argument, the caller did not describe "screaming" or a violent episode.  The court also noted that when the officers arrived, there was no evidence of an emergency.  As far as whether F.S. consented to the initial entry, the circuit court found she did not: "I don't think that she even thought about consenting.  I think the officers were on, basically on

---

[5] The body camera video shows the officer actually knocked five separate times.

[6] The circuit court's findings were based in large part on the body camera video introduced at the evidentiary hearing.

4

top of her [as the police] mov[ed] into the apartment. I think she accepted it as a fait accompli and then went on with the officers moving through."

¶8      The circuit court granted Washington's suppression motion. The State appeals.

## II. DISCUSSION

¶9      On appeal, the State argues that the emergency aid exception justified the police entry into F.S.'s apartment. It contends that because the police responded to a 911 call for a potential domestic disturbance, it was reasonable for the officers to believe that a person inside might need immediate assistance.[7]

¶10      "[A]n order granting or denying a motion to suppress evidence" presents "a question of constitutional fact, which requires a two-step analysis" on appellate review. *State v. Asboth*, 2017 WI 76, ¶10, 376 Wis. 2d 644, 898 N.W.2d 541. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." *State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (internal citations omitted).

¶11      The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. Article I, section 11 of the Wisconsin Constitution likewise provides that "[t]he right

---

[7] The State goes on to assert that after the initial entry, F.S. gave consent and that the drugs were in plain view. Based on our conclusion that the initial entry violated the Fourth Amendment, it is not necessary for us to address either assertion.

of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause[.]" WIS. CONST. art. I, § 11.

¶12    "A [search or] seizure conducted without a valid warrant is presumptively unreasonable." *State v. Brereton*, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369 (citing *United States v. Ross*, 456 U.S. 798, 824-25 (1982)). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Whether a search is exempt from the warrant requirement involves balancing "the degree to which it intrudes upon an individual's privacy and … the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

¶13    In balancing these interests, courts have concluded that warrantless searches may comport with the Fourth Amendment if a search falls within a recognized exception. *See, e.g.*, *Kentucky v. King*, 563 U.S. 452, 459 (2011). One well-established exception to the Fourth Amendment is the emergency aid exception. Police may enter a home without a warrant if they reasonably believe such an entry is necessary "'to assist persons who are seriously injured or threatened with such injury.'" *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (citation omitted); *State v. Ware*, 2021 WI App 83, ¶20, 400 Wis. 2d 118, 968 N.W.2d 752.

¶14    For this exception to apply, the State must prove: (1) the police had an immediate need to provide aid due to an actual or threatened serious injury; and (2) the immediate entry was necessary to provide that aid. *See Brigham City*, 547 U.S. at 403; *see also State v. Rome*, 2000 WI App 243, ¶16, 239 Wis. 2d 491, 620 N.W.2d 225. Whether the police acted reasonably is an objective test. *Ware*, 400

6

Wis. 2d 118, ¶21. "The objective test of the emergency rule requires that the officer be able to point to specific facts that, taken with the rational inferences from those facts, reasonably warranted the intrusion into an area in which a person has a reasonable expectation of privacy." *State v. Boggess*, 115 Wis. 2d 443, 451, 340 N.W.2d 516 (1983).

¶15 The State argues the circuit court erred in finding that there was no emergency. Specifically, it asserts that the officers' act of immediately entering F.S.'s apartment when she opened the door was reasonable because the 911 call reported a potential domestic dispute, the officers responded to the apartment within minutes, and domestic disputes carry the threat of violence. The State asks us to reject the circuit court's finding that no emergency existed based on the police finding the apartment quiet. It contends that in many domestic disputes, police may find it "all quiet" when they arrive and that the quietness does not necessarily mean that there is no emergency. The State says this case is analogous to *Boggess*, 115 Wis. 2d 443, where the supreme court upheld a warrantless entry into the home based on the emergency aid exception.

¶16 The dispositive question here is whether, under all of the circumstances, the officers' immediate entry into F.S.'s apartment was reasonable under the emergency aid exception. In other words, we must determine whether it was reasonable for the police, based on the information they had at the moment, to believe there was an immediate need to enter F.S.'s apartment to provide aid because of an actual or threatened serious injury.

¶17 We agree with the circuit court that the police lacked sufficient information to justify entry under the emergency aid doctrine. It was not reasonable for the police to believe, based on the information they had, that immediate entry

was required to provide aid to someone inside due to an actual or threatened serious injury. Although the State is correct that domestic disturbances may indeed present situations where emergency aid is required, there is insufficient evidence here to suggest that this disturbance presented such an emergency. As the circuit court found, the 911 caller reported a loud argument and a single "ow." The caller did not report having heard anyone being threatened, nor did the caller report having observed any actual serious injury. When the police arrived shortly after 1:00 a.m., both the building and apartment were quiet. The police did not hear anything that would indicate anyone inside the apartment was seriously injured or about to be seriously injured. They did not hear anyone calling out for help either before they started knocking on the door or in between knocks. There was no noise coming from inside the apartment that suddenly stopped when police knocked. The only noise was a barking dog, which began only after the police knocked on F.S.'s door. Further, the 911 call did not come from an alleged victim inside the apartment. And, when F.S. answered the door, the officers did not observe any physical injuries or other signs that she was in need of immediate aid, nor did they obtain any information to suggest anyone else in the apartment was in need of emergency assistance before they entered. Under the totality of the circumstances, the facts here do not justify entry under the emergency aid doctrine, and the police's immediate entry therefore was not reasonable.

¶18 The State's reliance on *Boggess* is unpersuasive, and the facts there are distinguishable. In *Boggess*, our supreme court concluded the police entry was warranted under the emergency aid exception because the anonymous caller provided detailed and specific information that children were at risk of imminent

harm.[8] 115 Wis. 2d at 457. The *Boggess* caller said he knew the Boggesses well, that Mr. Boggess had a bad temper, and that the caller had personally seen one of the Boggesses' children limping and bruised. *Id.* at 456. "The caller indicated that two children at the Boggess residence may have been battered and needed medical attention." *Id.* at 457. When the social worker and the police officer arrived at the Boggesses' home, they questioned Mr. Boggess, which allowed them to corroborate some of the caller's information before actually entering the home. *Id.* at 456.

¶19    The *Boggess* court also indicated that Wisconsin cases that have upheld a warrantless entry based on the emergency aid exception "have generally involved a set of common circumstances from which we concluded that a reasonable person could have believed an emergency existed." *Id.* at 451-52. The court provided two examples: (1) *State v. Kraimer*, 99 Wis. 2d 306, 298 N.W.2d 568 (1980), where "[t]he caller stated, in part, that he had shot and that he believed he had killed his wife four days earlier, that his four children were at home with him, and that he was very upset[,]" *Boggess*, 115 Wis. 2d at 452; and (2) *State v. Pires*, 55 Wis. 2d 597, 201 N.W.2d 153 (1972), where "police made a warrantless entry into a home after receiving a police radio dispatch to go to the defendant's address because of a report that there supposedly was a child's body and a semiconscious woman in the dwelling." *Boggess*, 115 Wis. 2d at 452. *Boggess* concluded that the facts in *Kraimer* and *Pires* would lead a reasonable person to believe that an emergency existed. *Boggess*, 115 Wis. 2d at 451-52.

---

[8] The call in *Boggess* was not made directly to police—it was made to the county's Department of Social Services. The social worker then relayed the information the caller provided to police, and the social worker and the police officer went to the Boggess home together. *State v. Boggess*, 115 Wis. 2d 443, 446, 340 N.W.2d 516 (1983).

9

¶20 The facts surrounding the police entry into F.S.'s apartment, however, did not involve anything similar to *Boggess*, *Kraimer*, or *Pires*. There was no eyewitness to children (or anyone else) having been recently injured and facing continuing danger. There was no report from anyone stating that he had shot someone and that there would potentially be additional victims. The police did not have information that there was a body or semiconscious individual inside F.S.'s apartment. Simply put, the police in this case did not have sufficient information to justify warrantless entry into F.S.'s apartment under the emergency aid exception. Accordingly, the circuit court properly granted Washington's suppression motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.