STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy T. CLARK, Defendant-Appellant.

Court of Appeals

*No. 02–2195–CR. Submitted on briefs April 1, 2003.—Decided May 20, 2003.*

2003 WI App 121

(Also reported in 666 N.W.2d 112.)

557

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rodney L. Cubbie* of *Cubbie & Pepper, Ltd.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Timothy T. Clark appeals from the judgment of conviction entered after he pled guilty to one count of possession of cocaine with intent to deliver, contrary to Wis. Stat. § 961.41(1m)(cm)5 (2001–02).[1] Clark contends that the circuit court erred in denying his suppression motion because the vehicle he was driving was searched in violation of his constitutional protection against unreasonable searches and seizures. Because towing the vehicle under the circumstances presented here was not a proper exercise of the police department's community caretaker function, we conclude that the subsequent inventory search constituted a violation of Clark's rights under the Fourth Amendment to the United States Constitution and article 1, section 11, of the Wisconsin Constitution. *See* U.S. Const. amend. IV; Wis. Const. art. 1, § 11. Accordingly, we reverse the circuit court's decision denying Clark's suppression motion and remand the matter to the circuit court.

## I. Background.

¶ 2. On September 26, 2001, at approximately 5:00 p.m., Milwaukee police officers responded to a report of shots fired and a possible attempted robbery in the 400 block of North 39th Street. At the scene,

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

Detective Richard McKee interviewed an individual named Eugene Stadler, who told Detective McKee that he had observed the incident.[2]

¶ 3. Stadler stated that earlier in the day, "his cousin Tim" had come to visit him at his house located at 430 North 39th Street.[3] Stadler did not know Clark's address or telephone number. Stadler stated that Clark was driving a gray Ford Taurus station wagon when he arrived at his house. He also informed Detective McKee that as Clark left the residence, he was approached by a man holding a handgun, who ordered him to "drop it." Stadler said that Clark then fled on foot and ran into a gangway. As Clark ran away, the man fired a number of shots in his direction.

¶ 4. The police found a spent shell casing in the street within ten yards of a parked gray Ford Taurus automobile. They also discovered another spent shell casing in a gangway approximately seventy-five yards from the vehicle. When Detective McKee checked the Taurus's registration, he discovered that it was jointly registered to Pamela Johnson and Christine VanMun who resided in the 9000 block of North 95th Street. Although the detective observed that the Taurus was undamaged and legally parked, because the vehicle was unlocked, Detective McKee decided to have it towed to the police department's impound lot for safekeeping. Before the car was towed, the detective conducted a search and discovered a backpack containing a pair of jeans and cocaine.

---

[2] The parties refer to this witness as both Eugene Stadlter and Eugene Stadler. To maintain consistency, we will refer to the witness as Eugene Stadler.

[3] "Tim" was later identified as Timothy T. Clark. At the time of the incident, Stadler knew Clark only by his first name.

¶ 5. On September 28, 2001, Clark was charged with possession of a controlled substance with intent to deliver. On November 12, 2001, Clark filed a suppression motion challenging the search of the vehicle. When asked at the suppression hearing why he decided to tow the vehicle, Detective McKee testified:

> I had an unsecured vehicle there, and no idea who was -- the owner/operator was, or how to get ahold [sic] of them other than the listing. But Mr. Sadler said that [it] was Tim's car. In my experience, vehicles are so frequently changing hands without the registration being changed over that the most prudent decision would be to tow it for safekeeping.

¶ 6. While testifying, the detective was referred to the Milwaukee Police Department's "safekeeping tow" policy, which states in relevant part:

## TOWING VEHICLES

. . . .

### 3/610.20 VEHICLE TOW CATEGORIES AND TOWING PROCEEDURES

. . . .

B. SAFEKEEPING TOW

This tow category *is to be used only when:*

1. A vehicle is to be towed and the owner/driver is unable to authorize a tow.

2. Ownership is in question.

3. The vehicle appears as "possibly stolen[,"] e.g., column damage, but not yet reported.

After reviewing the policy, Detective McKee concluded that Clark's vehicle was towed pursuant to subsection one of the policy.

¶ 7. When asked at the suppression hearing why he did not simply lock the vehicle and leave it legally parked on the street, Detective McKee responded: "Because our Department policy doesn't provide for that. We were only permitted to lock the vehicle and leave it legally parked when we had the permission and consent of the owner." However, on cross-examination, Detective McKee conceded that there was no *written* Milwaukee Police Department policy supporting his conclusion that he could not simply lock the vehicle and walk away:

> [DEFENSE COUNSEL]: Detective, you mentioned that it's against policy to leave a vehicle locked and legally parked without the permission of the owner; is that true?
>
> [DETECTIVE McKEE]: Well, it would be against policy to lock it and then leave it legally parked.
>
> [DEFENSE COUNSEL]: Can you cite us to the policy that states that?
>
> [DETECTIVE McKEE]: That's been my training, any time there's an unsecured vehicle that we are unable to locate the owner or operator of, then our policy is we're to tow it.
>
> [DEFENSE COUNSEL]: So you are telling me that this is something that you received in training, but you can't cite [ ] a written policy that cites that?
>
> [DETECTIVE McKEE]: Not off the top of my head, no. I don't believe – I don't believe one exists.

[DEFENSE COUNSEL]: All right. So let me ask this, are you [stating] that any patrol officer with the City of Milwaukee who observes a car legally parked, but unlocked, is required to have that vehicle towed?

[DETECTIVE McKEE]: No.

¶ 8. Before ordering the vehicle towed, Detective McKee never attempted to contact the registered owners of the Taurus. At the suppression hearing, the detective stated that he did not attempt to call them because he was "not equipped with a cell phone out there on the street" and "was not able to make such a call." Detective McKee, however, admitted that he did not even attempt to radio the police department to ask someone there to contact the registered owners of the vehicle.

¶ 9. On December 6, 2001, the circuit court denied Clark's suppression motion. On February 4, 2002, Clark entered a guilty plea, and on April 3, 2002, he was sentenced to ten years of initial confinement followed by seven years of extended supervision.

## II. ANALYSIS.

¶ 10. "On review of a trial court's denial of a motion to suppress, we will uphold the trial court's findings of fact unless they are clearly erroneous." *State v. Garrett*, 2001 WI App 240, ¶ 7, 248 Wis. 2d 61, 635 N.W.2d 615 (citing WIS. STAT. § 805.17(2) (1999–2000) and *State v. Williamson*, 113 Wis. 2d 389, 401, 335 N.W.2d 814 (1983)). "Whether a search is valid, however, is a question of constitutional law which we review *de novo.*" *Id.* (citing *State v. Guzman*, 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992)).

¶ 11. Here, the State contends that the search of the vehicle was a valid inventory search. "Although an inventory search is a 'search' within the meaning of the [F]ourth [A]mendment, it is also a well-defined exception to the warrant requirement." *State v. Weber*, 163 Wis. 2d 116, 132, 471 N.W.2d 187 (1991) (citations omitted). An analysis of an inventory search involves a two-step process: (1) analysis of the reasonableness of the seizure of the car in the first instance; and (2) analysis of the reasonableness of the inventory search. *See id.* at 133. Clark challenges the first step and argues that the police had no right to tow the vehicle.

¶ 12. The State makes much of the written "safe-keeping tow" policy, as well as the unwritten "unsecured vehicle" policy. The State cites *Thompson v. State*, 83 Wis. 2d 134, 265 N.W.2d 467 (1978), for the proposition that the seizure of the car was reasonable and permissible. The *Thompson* court stated: "The United States Supreme Court has held that inventory searches pursuant to 'Standard police procedures' are reasonable and permissible." *Id.* at 139–40; *see also South Dakota v. Opperman*, 428 U.S. 364, 373 ("In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents."). The State, however, has applied the reasoning of *Thompson* to the wrong step of the inventory search analysis – both *Thompson* and *Opperman* deal with the reasonableness of the inventory search; *i.e.*, was the decision to conduct an inventory search made pursuant to standard police operating procedures? *See Thompson*, 83 Wis. 2d at 140–41 (determining that the inventory search was not reasonable

566

or justified as an inventory search because "the 'inventory' involved here was not a disinterested cataloging of the car's contents[, and t]he motivation . . . was to discover evidence."); *Opperman*, 428 U.S. at 372 (stating "inventories pursuant to standard police procedures are reasonable[]"). These cases, however, do not deal with the reasonableness of the seizure of the vehicle in the first instance; *i.e.*, was the decision to impound and tow the vehicle reasonable?

¶ 13. Moreover, the *Opperman* court explicitly stated that each search must be independently evaluated applying the Fourth Amendment standard of reasonableness:

> "But the question here is not whether the search was *authorized* by state law. The question is rather whether the search was reasonable under the Fourth Amendment."
>
> . . . .
>
> "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only '*unreasonable* searches and seizures.' The relevant test *is not the reasonableness of the opportunity to procure a warrant,* but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts."

*Id.* at 372–73 (citations omitted) (emphasis and alterations in original).
██

¶ 14. Thus, with respect to the Milwaukee Police Department's policies, first and foremost, we conclude that compliance with an internal police department policy does not, in and of itself, guarantee the reason-

ableness of a search or seizure. Rather, the constitutionality of each search or seizure will, generally, depend upon its own individual facts. *See State v. Guy*, 172 Wis. 2d 86, 100, 492 N.W.2d 311 (1992) (stating that the court would "not place a constitutional imprimatur on the Milwaukee Police Department's policy of automatically frisking everyone present for weapons while executing a search warrant for drugs in a private residence[,]" but rather, that the "constitutionality of each such frisk [would] continue to depend upon its [unique] facts.").

¶ 15. Second, the first subsection of the "safekeeping tow" policy provides no guidance as to *why* or *when* an automobile may be towed for safekeeping. The policy states: "This tow category is to be used only when . . . [a] vehicle *is to be towed* and the owner/driver is unable to authorize a tow." Basically, this states that "a vehicle is to be towed for safekeeping when a vehicle is to be towed." Because this subsection offers no insight into *why* or *when* a vehicle may be seized – only that if it has already been determined that a vehicle is to be towed, the officer may do so for safekeeping even if the owner is unable to consent – the policy relied upon by Detective McKee is wholly unhelpful here.

¶ 16. Third, the unwritten "unsecured vehicle" policy, as explained by Detective McKee, is overly broad. Detective McKee testified that according to this policy, "[the police] were only permitted to lock the vehicle and leave it legally parked when [they] had the permission or consent of the owner," but that otherwise, "any time there's an unsecured vehicle that [the police] are unable to locate the owner or operator of, then [their] policy is . . . to tow it." As pointed out by defense counsel, this policy might lead to the police towing every unlocked vehicle on the street for "safekeeping."

¶ 17. Fourth, even assuming the reasonableness of both policies, before a tow is mandated, each policy requires an attempt to locate the vehicle's owner and seek consent to either tow or lock and leave the vehicle. In the instant case, Detective McKee failed to attempt to contact the owners of the vehicle and obtain consent. Therefore, he failed to comply with the Milwaukee Police Department's policies, written and unwritten.

■

¶ 18. Accordingly, we must only determine, absent any police department policies, whether the seizure satisfied the reasonableness standard of the Fourth Amendment to the United States Constitution and article 1, section 11, of the Wisconsin Constitution. *See State v. Wodenjak*, 2001 WI App 216, ¶ 5, 247 Wis. 2d 554, 634 N.W.2d 867. The Fourth Amendment to the United States Constitution and article 1, section 11, of the Wisconsin Constitution both protect against unreasonable searches and seizures. Each states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; WIS. CONST. art. 1, § 11. Therefore, searches and seizures of homes conducted without a warrant are presumptively unreasonable. *See State v. Tomlinson*, 2002 WI 91, ¶ 20, 254 Wis. 2d 502, 648 N.W.2d 367.

■

¶ 19. While warrantless searches of homes are presumptively unreasonable, warrantless searches of vehicles are not. *See State v. Marquardt*, 2001 WI App 219, ¶ 26, 247 Wis. 2d 765, 635 N.W.2d 188.

> During the last seventy-five years, the United States Supreme Court has recognized that the unique nature of automobiles sets them apart from other areas pro-

tected from warrantless searches under the Fourth Amendment. This exception to the general rule requiring a warrant for searches and seizures is known as the automobile exception.

. . . .

Our first cases establishing the automobile exception to the Fourth Amendment's warrant requirement were based on the automobile's "ready mobility," an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear . . . . More recent cases provide a further justification: the individual's reduced expectation of privacy in an automobile, owing to its pervasive regulation . . . . If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.

. . . .

Thus, under current federal law, the warrantless search of a vehicle does not offend the Fourth Amendment if (1) there is probable cause to search the vehicle; and (2) the vehicle is readily mobile.

*Id.*, ¶¶ 26–31 (citations omitted). In the instant case, because Detective McKee lacked probable cause to search the vehicle, the automobile exception does not apply.

¶ 20. Another exception to these requirements arises when the State can demonstrate that the seizure was made in the course of a "community caretaker function." *See State v. Kelsey C.R.*, 2001 WI 54, ¶ 34, 243 Wis. 2d 422, 626 N.W.2d 777; *see also State v. Ellenbecker*, 159 Wis. 2d 91, 96, 464 N.W.2d 427 (Ct. App. 1990) (stating that a "community caretaker action

is not an investigative . . . stop and thus does not have to be based [upon] a reasonable suspicion of criminal activity."). The State argues that the vehicle Clark was driving was towed for "safekeeping." Therefore, we must determine whether seizure of the vehicle for safekeeping was a reasonable exercise of the community caretaker function. *See Kelsey C.R.*, 243 Wis. 2d 422, ¶ 34.

> In the interests of public safety and as part of what the Court has called "community caretaking functions," automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*Opperman*, 428 U.S. at 368–69 (citations and footnote omitted).

¶ 21. A three-step test is used to evaluate the reasonableness of such a seizure: "(1) that a seizure within the meaning of the [F]ourth [A]mendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need and interest outweigh the intrusion upon the privacy of the individual." *State v. Anderson*, 142 Wis. 2d 162, 169, 417 N.W.2d 411 (Ct. App. 1987). With respect to the second step, a bona fide

community caretaker activity is one that is "divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Dull*, 211 Wis. 2d 652, 658, 565 N.W.2d 575 (Ct. App. 1997) (citations omitted). The third step requires us to consider four additional factors:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

*Anderson*, 142 Wis. 2d at 169–70 (footnotes omitted). "Overriding this entire process is the fundamental consideration that any warrantless intrusion must be as limited as is reasonably possible, consistent with the purpose justifying it in the first instance." *Id.* at 169.

¶ 22. In the instant case, none of the typical public safety concerns illustrated by *Opperman* are at issue. The vehicle in question was not: (1) involved in an accident; (2) interrupting the flow of traffic; (3) disabled or damaged; (4) violating parking ordinances; or (5) in any way jeopardizing the public safety or the efficient movement of vehicular traffic. *See Opperman*, 428 U.S. at 368–69. The gray Ford Taurus was legally parked and undamaged. Thus, it posed no apparent public safety concern.

¶ 23. Detective McKee testified, however, that the vehicle was not towed for the public's safety, but rather, to ensure that the vehicle itself and any property inside the vehicle would not be stolen. While this appears to be a bona fide community caretaker activity, a number of effective alternatives were available.

¶ 24. The State argues that we are not allowed to examine whether more reasonable techniques were available. Again, the State mischaracterizes the law. In *State v. Sokolow*, 490 U.S. 1, 11 (1989), the Supreme Court stated: "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . ." However, *Sokolow* and its progeny apply to *Terry* stops. *See id.* at 7–8; *see also Terry v. Ohio*, 392 U.S. 1 (1968).

¶ 25. The seizure in question concerns the community caretaker function. In *Anderson*, we clearly established that in considering whether the public need and interest outweigh the intrusion upon the privacy of the individual, a court may consider "the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished." *Anderson*, 142 Wis. 2d at 170. Thus, under the third step of the reasonableness test, we must compare the availability and effectiveness of alternatives with the type of intrusion actually accomplished.

¶ 26. Here, Clark offers a number of reasonable alternatives to towing and impounding a vehicle that is left unlocked when ownership may be in question. A reasonable police officer presented with a similar situation, being primarily concerned with the safety of a vehicle and its contents, could simply lock the vehicle and walk away. This alternative is the least burdensome on the police department, as well as the least intrusive on the individual. Alternatively, if an officer is convinced that a vehicle needs to be towed for safekeeping,

either because the vehicle cannot be locked or because the officer reasonably believes that the vehicle could be stolen or vandalized, he or she should at least attempt to contact the owner and obtain consent.[4]

¶ 27. Because Detective McKee neither: (1) locked the vehicle and walked away; nor (2) attempted to contact the owners of the vehicle in light of his belief that the vehicle or its contents may be stolen, we conclude that, absent these safeguards, the public need in towing the unlocked vehicle did not outweigh the intrusion upon Clark's privacy. Furthermore, although an automobile was involved and individuals generally have a lesser expectation of privacy in an automobile, *see Anderson,* 142 Wis. 2d at 169 n.4, we conclude that Clark's reasonable expectation of privacy included the expectation that he could leave his vehicle parked legally on the street, albeit unlocked, without it being towed. Accordingly, the circuit court erroneously denied Clark's suppression motion.

¶ 28. Based upon the forgoing, the circuit court is reversed and the cause remanded.

*By the Court.*—Judgment reversed and cause remanded.

---

[4] This alternative directly corresponds to the Milwaukee Police Department's own "safekeeping tow" policy.