# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1774-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Alfonso Lorenzo Brooks, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 622,935 N.W.2d 559
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 25, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 27, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Wagner |

JUSTICES:

KELLY, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Leon W. Todd*, assistant state public defender. There was an oral argument by *Leon W. Todd.*

For the plaintiff-respondent, there was a brief filed by *Abigail C.S. Potts*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Abigail C.S. Potts*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 18AP1774-CR
(L.C. No. 2015CF3861)

STATE OF WISCONSIN      :     IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

    **v.**

**Alfonso Lorenzo Brooks,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 25, 2020**

Sheila T. Reiff
Clerk of Supreme Court

KELLY, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 DANIEL KELLY, J. Alfonso Lorenzo Brooks was parked on the side of a road after having been stopped for speeding. He was alone in the vehicle, and he had been driving with a suspended operator's license. Although he told the Milwaukee Sheriff deputies who were issuing him his traffic citations that he could have a licensed driver retrieve the vehicle, the deputies told him department policy required them to take it to an impound lot. The deputies conducted an inventory search of the vehicle prior to the tow. Mr. Brooks, a convicted felon,

could not lawfully possess the firearm the deputies found, and so he was arrested. We consider in this case whether the deputies were performing a bona fide community caretaker function when they seized Mr. Brooks' vehicle without a warrant. We conclude they were not, and so we reverse the decision of the court of appeals because the seizure and ensuing inventory search were both unconstitutional.[1]

## I. BACKGROUND

¶2 Late one summer night in 2014, Mr. Brooks came to the attention of Milwaukee County Sheriff's Deputies Dean Zirzow and Travis Thompson because he was traveling the Lake Park freeway at a speed of no less than 15 miles per hour above the posted speed limit. The deputies pursued Mr. Brooks and, once he exited the freeway, pulled him over in a mixed commercial and residential neighborhood. While performing duties incident to the traffic stop, the deputies learned Mr. Brooks' driver's license was suspended and that he was a convicted felon. The deputies cited Mr. Brooks for unreasonable and imprudent speed and for operating a vehicle with a suspended driver's license.

¶3 The deputies did not arrest Mr. Brooks for the traffic citations, but neither could he drive away at the conclusion of the traffic stop because he did not have a valid license and he was alone in the vehicle. The deputies informed Mr. Brooks

---

[1] This is a review of an unpublished court of appeals opinion, State v. Brooks, No. 2018AP1774-CR, unpublished slip op. (Wis. Ct. App. Aug. 20, 2019) (per curiam), affirming the Milwaukee County Circuit Court, the Honorable Jeffrey A. Wagner, presiding.

2

that, under those circumstances, department policy required them to tow the vehicle to an impound lot.[2] Mr. Brooks asked if his girlfriend—to whom the car was registered and who was following shortly behind him—could retrieve the car from the scene of the traffic stop. Deputy Zirzow denied the request because department policy prohibits non-officials from coming to the scene of ongoing police action.[3]

¶4 During the dialogue between Mr. Brooks and Deputy Zirzow, Deputy Thompson commenced a warrantless inventory search of the vehicle's contents preparatory to the tow. After discovering a firearm in the trunk area, the deputies arrested

---

[2] We do not know whether that is an accurate recitation of the Department's policy because the State never introduced it. Included with Mr. Brooks' motion for postconviction relief, however, is a policy entitled "Arrest Tow," which provides: "It shall be the policy of this agency to tow any vehicle when the driver and/or owner is arrested and no responsible person is present, at the time of the arrest, to take control of the vehicle." If that is the policy to which the deputies referred, it would not apply in this case because Mr. Brooks was not under arrest when the deputies made the decision to impound the vehicle.

[3] Mr. Brooks' girlfriend arrived on the scene before the vehicle was towed.

Mr. Brooks for possession of a firearm by a felon, contrary to Wis. Stat. § 941.29(2)(a) (2013-14).[4]

¶5 Mr. Brooks moved to suppress the firearm, arguing the warrantless seizure of the vehicle and subsequent inventory search violated the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 11 of the Wisconsin Constitution. Specifically, he argued that the "community caretaker" exception to the Fourth Amendment's warrant requirement did not justify seizure of the vehicle. The circuit court denied the motion, after which Mr. Brooks pled guilty and received his sentence in due course.

¶6 Mr. Brooks pursued postconviction relief, asserting that: (1) there had been no valid "exercise of law enforcement's community caretaker function because the vehicle was lawfully parked and not obstructing traffic[]"; and (2) Mr. Brooks' trial counsel was ineffective for failing to introduce evidence that Mr. Brooks' vehicle had been lawfully parked, and that the Department's written policies did not authorize the

---

[4] "A person specified in sub. (1) is guilty of a Class G felony if he or she possesses a firearm under any of the following circumstances: (a) The person possesses a firearm subsequent to the conviction for the felony or other crime, as specified in sub. (1)(a) or (b)." Wis. Stat. § 941.29(2)(a) (2013-2014). This provision was repealed after Mr. Brooks' conviction, see 2015 Wis. Act 109, and the same offense now appears at Wis. Stat. § 941.29(1m)(a) (2017-2018) ("A person who possesses a firearm is guilty of a Class G felony if any of the following applies: (a) The person has been convicted of a felony in this state.").

All subsequent references to the Wisconsin Statutes are to the 2013-2014 version unless otherwise indicated.

decision to tow the vehicle. The circuit court denied the motion without a hearing, and the court of appeals affirmed. We granted Mr. Brooks' petition for review and now reverse.

## II. STANDARD OF REVIEW

¶7 "'Whether evidence should be suppressed is a question of constitutional fact.'" State v. Floyd, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560 (quoting State v. Knapp, 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899). We will review the circuit court's findings of historical fact under the clearly erroneous standard, but the circuit court's application of historical facts to constitutional principles is a question of law we review independently. State v. Turner, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827 (1987). "While we are not bound by the circuit court's or court of appeals' decisions on questions of law, we benefit from their analyses." Floyd, 377 Wis. 2d 394, ¶11 (citing State v. Kyles, 2004 WI 15, ¶7, 269 Wis. 2d 1, 675 N.W.2d 449).

## III. ANALYSIS

¶8 In this case we decide whether the "community caretaker" doctrine authorizes law enforcement officers to seize a vehicle without a warrant when, subsequent to a traffic stop, they discover the driver and sole occupant of the vehicle does not have a valid driver's license. Our constitution does not prohibit all governmental seizures, of course, just the unreasonable ones. Wis. Const. art. I, § 11 ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be

5

violated[.]").[5]  Warrantless seizures (as occurred here) are presumptively unreasonable, and therefore unconstitutional. State v. Asboth, 2017 WI 76, ¶12, 376 Wis. 2d 644, 898 N.W.2d 541 ("A seizure conducted without a valid warrant is presumptively unreasonable." (internal marks omitted)).[6] However, "because the ultimate touchstone of the Fourth Amendment [and Article I, Section 11 of the Wisconsin Constitution] is 'reasonableness,' the warrant requirement is subject to certain exceptions." Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).  One of those exceptions allows law enforcement officials to perform a warrantless seizure when acting in their "community caretaker" role.  Asboth, 376 Wis. 2d 644, ¶13.

---

[5] The United States Constitution contains the same guarantee, and we generally interpret them coextensively. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"); State v. Floyd, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560 (citing State v. Dumstrey, 2016 WI 3, ¶14, 366 Wis. 2d 64, 873 N.W.2d 502).

[6] See, e.g., State v. Higginbotham, 162 Wis. 2d 978, 990-91, 471 N.W.2d 24 (1991) (stating that "[s]earches conducted pursuant to a warrant are a more reliable safeguard against improper searches because the decision to search is made by a neutral magistrate who has the opportunity to make an informed and deliberate determination regarding the existence of probable cause, rather than by officers whose more hurried decisions may be influenced by the competitive nature of their work and their desire to discover evidence they suspect may be present at a given location[]" and that "[w]arrants are also preferred because a 'warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" (citation omitted)).

¶9 Before evaluating this exception to the warrant requirement, we should be clear about which seizure we are addressing——there were two in this case. Although they overlapped for a short period of time while the first was ending and the second was commencing, they were conceptually distinct. It is essential that we distinguish them because the constitutionally-acceptable scope and duration of each seizure is inextricably bound up with its justifiable purpose.

¶10 The first seizure occurred when the deputies stopped Mr. Brooks for speeding. See State v. Brereton, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369 ("The stop of an automobile by law enforcement constitutes a seizure of the vehicle, as well as its occupants."). That seizure could last no longer than necessary to complete the purpose of the traffic stop. Floyd, 377 Wis. 2d 394, ¶21 ("Traffic stops are meant to be brief interactions with law enforcement officers, and they may last no longer than required to address the circumstances that make them necessary."); see also Rodriguez v. United States, 575 U.S. 348, 354, (2015) ("Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" (citation omitted)). The duration of the seizure is, therefore, necessarily co-terminus with the purpose of the traffic stop: "Authority for the seizure thus ends when tasks tied to the traffic infraction are——or reasonably should have been——completed." Rodriguez, 575 U.S. at 354. The scope of the seizure is similarly delimited by its purpose:

7

> "The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." [Terry v. Ohio, 392 U.S. 1, 19 (1968) (quoting Warden v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring))]. The reasonableness requirement of the Fourth Amendment requires no less when the police action is a seizure permitted on less than probable cause because of legitimate law enforcement interests. The scope of the detention must be carefully tailored to its underlying justification.

Florida v. Royer, 460 U.S. 491, 500 (1983) (emphasis added). So the first seizure ended once the deputies accomplished the purpose of the traffic stop, to wit, safely issuing the two citations to Mr. Brooks.

¶11 The second seizure occurred when the deputies decided that Mr. Brooks' lack of a valid driver's license required them to impound the vehicle. Deputy Zirzow was still in the process of issuing the citations to Mr. Brooks (thereby winding down the first seizure) when Deputy Thompson began inventorying the vehicle in preparation for the tow (which commenced the second seizure). This is the seizure the State says was justified by the community caretaker doctrine, and which we now address.

### A. The Community Caretaker Exception

¶12 When the State claims law enforcement's community caretaker role justifies a seizure, as it does here, we evaluate the following three criteria:

> (1) whether a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, whether the police were exercising a bona fide community caretaker function; and (3) if so, whether the public interest outweighs the intrusion upon the privacy of the individual such that the community caretaker function was reasonably exercised[.]

8

Asboth, 376 Wis. 2d 644, ¶13 (citation omitted).[7] Because there is a presumption against warrantless seizures, the State bears the burden of proving the community caretaker doctrine justified seizure of the vehicle Mr. Brooks was driving. State v. Payano-Roman, 2006 WI 47, ¶30, 290 Wis. 2d 380, 714 N.W.2d 548 ("The government bears the burden of proving that a warrantless search falls within one of the narrowly drawn exceptions.").

¶13 Our focus in this case is on the second element——whether the police were performing a bona fide community caretaker function.[8] "The community caretaker exception to the warrant requirement[,]" we have said, "accounts for the multifaceted nature of police work[]"——"'first aid provider, social worker, crisis intervener, family counselor, youth mentor and peacemaker, to name a few.'" Asboth, 376 Wis. 2d 644, ¶15

---

[7] The third element, although not implicated in this case, involves "balancing a public interest or need that is furthered by the officer's conduct against the degree of and nature of the restriction upon the liberty interest of the citizen." State v. Kramer, 2009 WI 14, ¶40, 315 Wis. 2d 414, 759 N.W.2d 598. This "balancing" includes:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

Id., ¶¶40-41.

[8] The parties agree that the deputies "seized" the vehicle within the meaning of the Fourth Amendment.

(citation omitted). The police are often "'society's problem solvers when no other solution is apparent or available.'" Id. (citation omitted). When functioning as a "community caretaker," a seizure is permissible to "protect persons and property"[9] so long as it is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[10]

¶14 The nature and use of motor vehicles frequently call upon police to act in this capacity. "To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities." South Dakota v. Opperman, 428 U.S. 364, 368 (1976). The same rationale might require towing illegally parked vehicles: "Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." Id. at 368-69. This interaction between individual vehicles and the general public means that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 369.

---

[9] State v. Pinkard, 2010 WI 81, ¶14, 327 Wis. 2d 346, 785 N.W.2d 592.

[10] Kramer, 315 Wis. 2d 414, ¶¶19-20 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)).

¶15 We considered the application of this doctrine in the motor vehicle context in Asboth, 376 Wis. 2d 644, upon which the State relies heavily in this case. Mr. Asboth, wanted for armed robbery, drove to a private storage facility and parked his car in an alley between two storage sheds. Id., ¶¶2-3. The car "entirely blocked access to one storage unit, and it impeded access to several others." Id., ¶4. Police found him there, placed him under arrest, and towed his car to an impound lot. Id. We concluded the police had justifiably seized the car in their community caretaker role for three reasons. First, we explained that leaving Mr. Asboth's vehicle unattended on private property "would have inconvenienced a private property owner and customers at the storage facility by impeding the beneficial use of the property." Id., ¶18. Removing the vehicle, we said, "remedied a potential disruption created by Asboth's arrest at the private storage facility, thus limiting the inconvenience to the property owner and customers." Id. Second, we said that "because Asboth was a suspect in a crime who also allegedly violated the terms of his probation, he likely faced a lengthy detention," and the possibility that the vehicle would remain abandoned for that amount of time "counseled in favor of its removal from the premises." Id., ¶19. Finally, we said that because Mr. Asboth was not the registered owner of the vehicle and no one else was present to take possession, "the possibility existed that officers would need to make arrangements to reunite the car with its registered owner." Id., ¶20. Taken as a whole, we concluded that these

reasons "establish[ed] that the officers had a bona fide community caretaker purpose when impounding Asboth's car." Id., ¶21.

### B. Application Of The Community Caretaker Exception

¶16 Determining whether law enforcement officials are acting in their community caretaker role is an objective analysis. That is, we look to whether "the officer has articulated an objectively reasonable basis under the totality of the circumstances for the community caretaker function[.]" State v. Kramer, 2009 WI 14, ¶36, 315 Wis. 2d 414, 759 N.W.2d 598. Here, the State's argument closely follows our analytical structure in Asboth. It says the seizure "was supported by the danger of theft or vandalism to a vehicle left unattended for an unanticipated amount of time." It also notes that Mr. Brooks "was not the registered owner of the car, so the officers had a duty to the registered owner to protect the vehicle." In addition, it says "[t]he car was parked far from the curb, potentially impeding traffic along the side of the street," and "[i]t was far enough away from Brooks' residence that it could be difficult for a member of his household to retrieve it expeditiously if any issues with the car arose." Finally, the State says the seizure had nothing to do with any investigatory purpose inasmuch as the deputies testified they were simply carrying out a department policy that required them to tow the vehicle under the circumstances then present.

¶17 This case bears some superficial similarities to Asboth. In both cases the drivers were alone, they were not the

12

registered owners of the seized vehicles, and the initial reason for their interaction with law enforcement bore no connection to the need to seize the vehicle.   But there is a fundamental distinction between the cases that overshadows those similarities and deprives them of any instructive value.   To wit, law enforcement officers in <u>Asboth</u> arrested the driver <u>before</u> they seized the vehicle he was driving, whereas here the deputies did not arrest Mr. Brooks until <u>after</u> the seizure. That difference sidelines two of the three justifications addressed in <u>Asboth</u>, and the factual record does not support the third.   We will address each of them in turn.

¶18  First, the sequence of seizure and arrest in this case negates the State's concern that leaving the vehicle unattended for an indeterminate amount of time would subject it to the risk of theft or vandalism.   There is, in fact, nothing to suggest the vehicle would have been unattended at all, much less indefinitely.   At the time the deputies decided to impound the vehicle, Mr. Brooks was not under arrest, which means he could have simply waited in the car until a licensed driver came to pick it up.[11]   And even if he had walked the two miles home to summon assistance, nothing in the record suggests that such a brief absence would measurably increase the risk of theft or

_____

[11] As it turned out, Mr. Brooks' girlfriend arrived on the scene before the vehicle was towed (but after Mr. Brooks had been arrested).

13

vandalism.[12]  This is markedly different from the circumstances obtaining in Asboth, in which the driver's pre-seizure arrest guaranteed the vehicle would be indefinitely unattended.

¶19 Second, the sequence of events in this case means the deputies owed no particular duty to the vehicle's registered owner.  In Asboth we acknowledged that arresting the driver gave rise to the possibility "that officers would need to make arrangements to reunite the car with its registered owner." Asboth, 376 Wis. 2d 644, ¶20.  But the burden fell to the officers only because they had arrested Mr. Asboth, which would presumably make it difficult for him to make such arrangements himself.  Here, Mr. Brooks was not under arrest and so he was free to attend to whatever arrangements were necessary to move the car.  And nothing about the situation suggested he might not be in lawful possession of the vehicle.  So, unlike Asboth, the deputies in this case had no apparent duty to "reunite the car with its registered owner."

¶20 The seizure/arrest sequence in this case, therefore, makes two of the three Asboth justifications for a vehicle seizure entirely inoperable.  And the record simply does not support the third.  The State tried to tie this case to Opperman's concern for ensuring "the efficient movement of vehicular traffic,"[13] and Asboth's[14] concern that the vehicle's

---

[12] Every vehicle parked in public is theoretically at risk of theft or vandalism.  But that does not mean impounding any such vehicle is a bona fide act of community caretaking.  The risk must be real, not theoretical.

[13] South Dakota v. Opperman, 428 U.S. 364, 369 (1976).

14

placement not impede or inconvenience other members of the public as they go about their business. To this end, it argued that Mr. Brooks' vehicle was "potentially impeding traffic along the side of the street." Mr. Brooks, however, has maintained ever since the suppression hearing that the car appeared to be lawfully parked along the side of the road. The State faults Mr. Brooks for not proving that assertion, pointing to the lack of any findings of fact in that regard. But this gap in the record is a problem for the State, not Mr. Brooks. As mentioned above, warrantless seizures are presumptively unconstitutional, which puts the burden on the State to prove their reasonableness. Payano-Roman, 290 Wis. 2d 380, ¶30. If the deputies had to act in their community caretaker role to prevent the vehicle from impeding traffic flow, it was the State's duty to prove such a necessity. But the record shows it made no attempt to do so. Even now, the State's most definitive argument on the subject is that the vehicle "potentially" impeded traffic. Without a supporting factual record, this is, at best, speculative. And we will not base our analysis on speculation. See, e.g., State v. Carter, 2010 WI 77, ¶63 n.48, 327 Wis. 2d 1, 785 N.W.2d 516 ("This court does not resolve cases on the basis of speculation, confabulation, or 'theories' about what may or may not have occurred. We resolve this case

---

[14] State v. Asboth, 2017 WI 76, ¶18, 376 Wis. 2d 644, 898 N.W.2d 541.

15

on the basis of the record before us and the circuit court's findings of fact based on that record.").[15]

¶21 Finally, the State says the deputies "reasonably exercised their community caretaker function in towing the car and inventorying it, because they did so according to reasonable standard criteria articulated by the Milwaukee County Sheriff's Department[.]" Although this part of the State's argument is

_____

[15] The State did not dispute Mr. Brooks' assertion in the circuit court that his vehicle appeared to be parked legally on the side of the road. Here, however, the State says the deputy's squad-car video shows that "several vehicles that drive by have to enter the other lane to avoid the officers' and Brooks' car." To the extent the State means for us to accept this as a refutation of Mr. Brooks' assertion that he was parked legally, it is too little and too late. It is commonplace for drivers, out of concern for officer safety, to give a wide berth to law enforcement officials when they have someone pulled over on the side of the road. They may not have entered the other lane had a squad car not been present.

But even if we accepted the State's interpretation of the video footage, this would simply create a factual dispute as to whether the car was parked legally. In such circumstances, we review the circuit court's findings of fact to determine whether they are clearly erroneous. See, e.g., State v. Walli, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898 ("when evidence in the record consists of disputed testimony and a video recording, we will apply the clearly erroneous standard of review when we are reviewing the trial court's findings of fact based on that recording."). Here, however, there are no factual findings to review, so we could not accept the State's position without finding facts in the first instance. This we do not do. See, e.g., Phelps v. Physicians Ins. Co. of Wisconsin, Inc., 2005 WI 85, ¶4 n.4, 282 Wis. 2d 69, 698 N.W.2d 643 (remanding to the circuit court to determine a factual issue because this court "cannot find facts[.]"); State v. Owens, 148 Wis. 2d 922, 930, 436 N.W.2d 869 (1989) ("Sorting out the conflicts and determining what actually occurred is uniquely the province of the trial court, not the function of the appellate court.").

16

not entirely clear, it appears to suggest that compliance with the Department's standardized policy means, ipso facto, that the deputies were acting as community caretakers. But compliance with an internal policy has nothing to do with whether they were acting in that role when they impounded the car. A standardized policy may provide some evidence that the police performed their community caretaker role reasonably, but it cannot establish the predicate——that they were acting as community caretakers. As we observed in State v. Guy, 172 Wis. 2d 86, 100, 492 N.W.2d 311 (1992), law enforcement policies cannot substitute for a case-by-case application of constitutional requirements to the facts at hand. Even if we were to accept that there is a Departmental policy that explicitly requires impoundment under these circumstances, the policy's existence is not evidence that the deputies were acting as community caretakers.

¶22 So neither Opperman, nor Asboth, nor the alleged Departmental policy tells us that the deputies were acting as community caretakers when they impounded Mr. Brooks' vehicle. On the other hand, State v. Clark, 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112, provides a closer analogy and more helpfully illuminates the limitations of the community caretaker doctrine in the vehicular context. There, police responded to a report of shots fired and, upon arrival at the scene, discovered a spent shell casing several feet from an unlocked and unoccupied vehicle. Id., ¶¶2-4. The police had reason to believe Mr. Clark had been driving the car earlier that day, but found that it was registered to someone else. Id., ¶4.

17

Although the vehicle was neither damaged nor illegally parked, the police impounded it for safekeeping simply because it was unlocked and unattended. Id. The court of appeals rejected the State's argument that Opperman justified impounding the vehicle under those circumstances as an exercise of the community caretaker function. Clark, 265 Wis. 2d 557, ¶22. It observed that the situation presented none of the "typical public safety concerns" identified in Opperman. Clark, 265 Wis. 2d 557, ¶22. Specifically, it said the vehicle was not "(1) involved in an accident; (2) interrupting the flow of traffic; (3) disabled or damaged; (4) violating parking ordinances; or (5) in any way jeopardizing the public safety or the efficient movement of vehicular traffic." Id. To the contrary, the vehicle was "legally parked and undamaged[]" and therefore "posed no apparent public safety concern." Id.[16] This case does not even rise to Clark's level of concern. Mr. Brooks was not under arrest when the deputies chose to impound his vehicle, so he could have stayed with his car after issuance of the traffic citations. If an unlocked, unattended car cannot justify a community caretaker seizure, an attended vehicle certainly

---

[16] Clark could have ended its analysis with these observations because they demonstrate the circumstances did not present an actual need for the police to act in their community caretaker role. The Clark court, however, proceeded to the third step of the analysis and concluded that, because there were available alternatives to impounding the vehicle, the seizure was unreasonable. State v. Clark, 2003 WI App 121, ¶¶25-26, 265 Wis. 2d 557, 666 N.W.2d 112.

18

cannot. This case presents even less of a caretaking need than Clark.

¶23 We conclude the deputies were not acting as community caretakers when they decided to impound Mr. Brooks' vehicle. To justify a seizure pursuant to this doctrine, the State must demonstrate the circumstances at hand called upon the police to perform one of their non-investigatory functions, such as protecting persons or property, providing first aid, intervening in a crisis, serving as a peacemaker, or otherwise acting as "'society's problem solvers when no other solution is apparent or available.'" Asboth, 376 Wis. 2d 644, ¶15 (citation omitted). But here there was no property or person in need of protection, no crisis, and no problem that did not have an apparent and available solution. There was just a man in a car on the side of a road making arrangements for someone to take him home. Consequently, the State has not "articulated an objectively reasonable basis under the totality of the circumstances for the community caretaker function[.]" Kramer, 315 Wis. 2d 414, ¶36.[17]

### C. The Search

¶24 When law enforcement officers have a constitutionally-legitimate reason for impounding a vehicle, they may inventory its contents without a warrant and without violating the

---

[17] Our conclusion that the deputies were not acting as bona fide community caretakers when they seized Mr. Brooks' vehicle means we need not progress to the third element of the doctrine, which considers whether law enforcement officers' performed that role reasonably.

constitution. The purpose of such a search is "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." Opperman, 428 U.S. at 369 (internal citations omitted). "It is also settled that a police inventory search is among the few exceptions to the warrant requirement of the fourth amendment." State v. Callaway, 106 Wis. 2d 503, 510, 317 N.W.2d 428 (1982).

¶25 But the permissibility of such inventory searches depends entirely on the constitutionality of the seizures that precede them. See, e.g., Clark, 265 Wis. 2d 557, ¶11 ("An analysis of an inventory search involves a two-step process: (1) analysis of the reasonableness of the seizure of the car in the first instance; and (2) analysis of the reasonableness of the inventory search."). Because the seizure in this case violated the Fourth Amendment and Article I, Section 11 of the Wisconsin Constitution, so did the ensuing inventory search.

## IV. CONCLUSION

¶26 The community caretaker doctrine recognizes and makes allowance for the multifaceted nature of police work, but it has its limits. Because we conclude the deputies in this case were not acting as bona fide community caretakers when they seized Mr. Brooks' vehicle, we hold that the court of appeals erred in

affirming the circuit court's denial of Mr. Brooks' suppression motion and we therefore reverse.[18]

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

---

[18] As an alternative basis for reversing the court of appeals, Mr. Brooks argues his trial counsel was ineffective for: (1) failing to introduce the Department's written policies, which Mr. Brooks asserts did not authorize the tow and inventory search under these circumstances because they referred only to tows subsequent to arrest; and (2) failing to introduce evidence he was lawfully parked. Because we conclude the community caretaker exception does not apply and suppression of the firearm is therefore required, it is unnecessary to address this alternative argument.