COURT OF APPEALS
DECISION
DATED AND FILED

December 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP995-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1876

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASON GENE ROGERS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jason Gene Rogers appeals from a judgment entered following his guilty plea to one count of possession of a firearm by a felon. On appeal, Rogers argues that the circuit court erroneously denied his

motion to suppress the firearm found in the vehicle he was driving at the time of his arrest. Upon review, we conclude that the officer was acting as a community caretaker when he impounded Rogers's vehicle and then searched the vehicle prior to the tow. Accordingly, the circuit court properly denied Rogers's motion to suppress, and we affirm.

## BACKGROUND

¶2 Milwaukee County Sheriff's Deputy Ryan Richards stopped Rogers near the Potawatomi Hotel & Casino on the night of Friday, April 14, 2017, for speeding and deviating from his lane. When Deputy Richards approached Rogers during the stop, Deputy Richards immediately noticed signs of intoxication, including that Rogers smelled of alcohol and had red, glassy eyes. Deputy Richards conducted field sobriety tests and a breathalyzer test and arrested Rogers for operating while intoxicated.

¶3 Following Rogers's arrest, Deputy Richards arranged a tow for the vehicle that Rogers was driving. Prior to the tow truck arriving, Deputy Richards searched the vehicle for valuables and discovered a firearm in the vehicle's center console.

¶4 Rogers sought to suppress the firearm that Deputy Richards discovered in the center console of the vehicle, and the circuit court held a hearing at which Deputy Richards, Rogers, Rogers's friend, and Rogers's brother testified.[1]

---

[1] Sergeant Mark Pawlak also testified at the hearing. However, Sergeant Pawlak's testimony indicated only that he was called to the scene because his squad car was equipped with a breathalyzer.

¶5 Deputy Richards testified that he was on patrol at approximately 10:30 p.m. on the night of Friday, April 14, 2017, when he stopped a white Chevy SUV on Canal Street and Potawatomi Circle. Deputy Richards was questioned further regarding where precisely he stopped the vehicle: "And now when the vehicle stopped for you, was it in a lane of traffic, a parking lane, a parking lot, something else; where was the vehicle stopped?" Deputy Richards responded, "It was in the lane of traffic, the right lane." On cross-examination, Deputy Richards was further questioned about the location of the vehicle:

> Q When you pulled over the vehicle that Mr. Rogers was driving, he pulled over into a parking lane; right?
>
> A I don't believe so. I believe there w[ere] two lanes and they are both traffic lanes.
>
> Q But there's no parking sign posted; right?
>
> A I'm not sure.
>
> Q So there could have been a parking sign posted?
>
> A I'm not sure.

¶6 After the vehicle stopped, Deputy Richards approached the driver and conducted an operating while intoxicated investigation. Following that investigation, Deputy Richards arrested Rogers and eventually placed him in the back of the squad car. He then arranged to have the vehicle towed because there was not another person at the scene who was authorized to take the vehicle. He testified that, pursuant to the Milwaukee Police Department's "Arrest Tow" policy, only the owner of the vehicle may give permission for someone to take the vehicle from the scene, and people who arrive during the stop are not permitted to

3

take the vehicle.[2]  Deputy Richards further confirmed that Rogers was the sole occupant of the vehicle at the time of the stop and, by Rogers's own admission, was not the vehicle's owner.[3]

¶7     Deputy Richards further testified that two individuals arrived at the scene during the stop.  Both of the individuals that arrived informed Deputy Richards that they would be willing to take the vehicle.  As Rogers testified, he called his friend when he noticed Deputy Richards behind him to "say [he] was being pulled over," and he asked his friend "if he could come down and help out." Rogers's friend then testified that he went to the scene with Rogers's brother.  According to Rogers, his friend, and his brother, Rogers was sitting on the curb at the time that they arrived at the scene.  Rogers's friend and brother further described that Rogers was in handcuffs by the time they arrived, and they were not able to speak with Rogers.

¶8     After Deputy Richards arranged to have the vehicle towed, he conducted an inventory search to search the vehicle for valuables and "prevent [the] department from theft lawsuits."  Prior to conducting the inventory search, Deputy Richards asked Rogers if he wanted any specific valuables out of the vehicle, and "he stated his phone and wallet."  Deputy Richards testified that he then uncovered the firearm in the center console during the inventory search.

---

[2] The policy states:  "It shall be the policy of this agency to tow any vehicle when the driver and/or owner is arrested and no responsible person is present, at the time of the arrest, to take control of the vehicle."  The policy further provides:  "The owner of the vehicle, if arrested, may give a licensed driver permission to drive his/her vehicle from the scene of the arrest."

[3] The vehicle was registered to an individual that Rogers's identified as his girlfriend.

¶9     The circuit court denied Rogers's motion, and Rogers ultimately pled guilty to one count of possession of a firearm by a felon.  He was subsequently sentenced to three years of initial confinement and three years of extended supervision, which was imposed and stayed for three years of probation.

¶10     Rogers now appeals.

## DISCUSSION

¶11     On appeal, Rogers argues that the circuit court erroneously denied his motion to suppress the firearm discovered in the center console of the vehicle that he was driving at the time of his arrest.  Specifically, Rogers argues that Deputy Richards was not exercising a bona fide community caretaker function when he impounded the vehicle, and thus, Deputy Richards was not authorized to search the vehicle for valuables as part of that impoundment.[4]

¶12     We review a circuit court's denial of a motion to suppress evidence using a two-step standard.  *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552.  We will uphold the circuit court's findings of fact unless they are clearly erroneous, and we review independently the application of the facts to the constitutional principles.  *Id.*

¶13     We apply a three-step test when evaluating the exercise of the community caretaker function:

---

[4] "When law enforcement officers have a constitutionally-legitimate reason for impounding a vehicle, they may inventory its contents without a warrant and without violating the constitution."  *State v. Brooks*, 2020 WI 60, ¶24, 392 Wis. 2d 402, 944 N.W.2d 832.  Thus, this case turns on Rogers's argument that Deputy Richards was not acting as a community caretaker at the time he impounded the vehicle.

> (1) whether a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, whether the police were exercising a bona fide community caretaker function; and (3) if so, whether the public interest outweighs the intrusion upon the privacy of the individual such that the community caretaker function was reasonably exercised[.]

*State v. Asboth*, 2017 WI 76, ¶13, 376 Wis. 2d 644, 898 N.W.2d 541 (citation omitted). The parties do not dispute that a search or seizure within the meaning of the Fourth Amendment occurred, and that Rogers's arguments focus on the second and third steps of the community caretaker test. Thus, we turn our attention to whether the second and third steps of the community caretaker test were met.

### I.  Bona Fide Community Caretaker Function

¶14  Rogers argues that Deputy Richards was not performing a bona fide community caretaker function under the second step because Deputy Richards "clarified" on cross-examination that he did not know if there was a parking sign posted where the vehicle was stopped or if there was a parking lane. Whether there was a parking sign posted at the place the vehicle stopped is irrelevant—Deputy Richards testified that the vehicle was stopped in the right lane of traffic. Indeed, Deputy Richards was presented with a choice between a traffic lane and a parking lane when describing where the vehicle stopped, and Deputy Richards specifically testified that the vehicle stopped "in the lane of traffic." On cross-examination, he also testified that he did not believe that Rogers pulled over into a parking lane and instead, he believed there were two lanes of traffic. Thus, we reject Rogers's argument.

¶15  The second step of the test "ultimately turns on whether the officer can 'articulate[] an objectively reasonable basis' for exercising a community caretaker function." *Asboth*, 376 Wis. 2d 644, ¶15 (alteration in original; citation

omitted). Here, because Deputy Richards testified that the vehicle was stopped in a lane of traffic near a casino on a Friday night and there was no one else authorized to take the vehicle from the scene, he has articulated an objectively reasonable basis for exercising his community caretaker function and arranging a tow for the vehicle. "'[T]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge' in the community caretaker context." *Id.*, ¶16 (citation omitted). Therefore, we conclude that Deputy Richards articulated an objectively reasonable basis for exercising his community caretaker function, and the second step is satisfied. *See id.*, ¶15.

## II. Reasonable Exercise of the Community Caretaker Function

¶16 Turning to the third step, Rogers argues that the community caretaker function was not reasonably exercised. Rogers contends that the vehicle was not at risk of theft or vandalism, there were no exigent circumstances warranting an immediate tow of the vehicle, and Deputy Richards's testimony "was equivocal whether the vehicle was illegally parked."

¶17 Under the third step of the community caretaker test, "we evaluate the reasonableness of the law enforcement officer's exercise of a bona fide community caretaker function by 'balancing [the] public interest or need that is furthered by the officer's conduct against the degree of and nature of the restriction upon the liberty interest of the citizen.'" *Asboth*, 376 Wis. 2d 644, ¶30 (alteration in original; citation omitted). We consider four factors:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and

> effectiveness of alternatives to the type of intrusion actually accomplished.

*Id.* (citations omitted).

¶18    Initially, we recognize that we are addressing the towing of a vehicle. When police impound a vehicle, they "need not demonstrate the same extraordinary public interest necessary to justify a warrantless community caretaker entry into the home." *Id.*, ¶31. Thus, we turn to Rogers's arguments noting that our context concerns the towing of a vehicle.

¶19    Rogers argues that Deputy Richards's exercise of his community caretaker function was unreasonable because the vehicle was not at risk of theft or vandalism or stopped by a parking sign. As we already established, the vehicle was located in a lane of traffic, and the vehicle's location in a lane of traffic renders any argument about the vehicle also being at risk of theft or vandalism or by a parking sign irrelevant. The public has "a significant interest" in police towing a vehicle that would impede traffic and create a potential hazard when left unattended, even in the absence of exigent circumstances. *See id.*, ¶32. Thus, the vehicle's location in a lane of traffic and it being left unattended by Rogers's arrest alone is sufficient to establish a legitimate public interest in towing the vehicle.

¶20    Nonetheless, Rogers cites to *State v. Brooks*, 2020 WI 60, 392 Wis. 2d 402, 944 N.W.2d 832, and contends that the State did not prove that the vehicle needed to be towed to prevent it from impeding traffic. We reject Rogers's reliance on *Brooks*.

¶21    In *Brooks*, our supreme court concluded that police were not exercising a bona fide community caretaker function when they impounded the vehicle the defendant was driving. *Id.*, ¶1. Notably, the defendant in *Brooks*

8

"maintained ever since the suppression hearing that the car appeared to be lawfully parked along the side of the road," and the State failed to present evidence to refute the defendant's contention. *Id.*, ¶20. That is not the case here, where Deputy Richards testified that the vehicle was in a lane of traffic.

¶22    Additionally, in *Brooks*, the police also impounded the vehicle prior to the defendant's arrest, and our supreme court stated, "That difference sidelines two of the three justifications addressed in *Asboth*[.]" *Id.*, ¶¶17-18. Our supreme court further stated, "This is markedly different from the circumstances obtaining in *Asboth*, in which the driver's pre-seizure arrest guaranteed the vehicle would be indefinitely unattended." *Id.*, ¶18. Therefore, given that Rogers's was arrested before Deputy Richards impounded the vehicle, we consider *Asboth* instructive in this case.

¶23    In *Asboth*, our supreme court addressed the impoundment of a vehicle at a storage facility following the driver's arrest. *Asboth*, 376 Wis. 2d 644, ¶4. The vehicle was blocking access to multiple units at the storage facility, and if the vehicle was left at the facility, it would have inconvenienced the owner of the storage facility, as well as the customers. *Id.*, ¶¶4, 18. The vehicle was also likely to be left unattended for an extended period of time based on the defendant's arrest and his having been the only occupant of the vehicle. *Id.*, ¶¶19-20. Thus, considering the circumstances, our supreme court concluded that the police were acting within their community caretaker function in impounding the vehicle. *Id.*, ¶1.

¶24    Similar to *Asboth*, the vehicle here was impeding traffic—it was parked in a traffic lane on a Friday night near the casino. Moreover, Rogers was the only occupant of the vehicle at the time of his arrest, and no one present was

authorized to remove the vehicle from the scene. Thus, the vehicle was likely to remain unattended in a lane of traffic for a significant period of time following Rogers's arrest. Accordingly, we conclude that the attendant circumstances support the reasonableness of Deputy Richards's exercise of the community caretaker function. *See id.*, ¶33.

¶25 We last consider the feasibility or effectiveness of alternatives available at the time of Rogers's arrest. Pursuant to a written policy, Deputy Richards was not permitted to allow Rogers's friend or Rogers's brother to take the vehicle, and Deputy Richards was not permitted to allow anyone at the scene to consent to the vehicle's removal because they were not the vehicle's owner. "A standardized policy may provide some evidence that the police performed their community caretaker role reasonably[.]" *See **Brooks***, 392 Wis. 2d 402, ¶21.[5] We, therefore, consider the policy under which Deputy Richards was acting in considering the feasibility and effectiveness of the alternatives.

¶26 Under the policy, neither Rogers, nor his friend, nor his brother were the registered owner of the vehicle, and therefore, none of them could provide consent to remove the vehicle from the scene. Only Rogers's girlfriend, the vehicle's registered owner, could have authorized someone to remove the vehicle from the scene, and she was not contacted by anyone at the time of the stop. Nor

---

[5] Rogers argues that the circuit court placed undue emphasis on the policy when it denied Rogers's motion. Our review of whether Deputy Richards reasonably exercised the community caretaker function, however, is *de novo*. *See **State v. Lonkoski**,* 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. Thus, we are not bound by the emphasis that the circuit court placed on the policy, and we note that a policy is properly considered in the analysis. *See **Brooks**,* 392 Wis. 2d 402, ¶21.

was Deputy Richards required to contact her or allow Rogers to contact her. *See Asboth*, 376 Wis. 2d 644, ¶35.

¶27    Additionally, pursuant to the policy, Deputy Richards was not permitted to allow anyone who arrived after Rogers's arrest to remove the vehicle from the scene. As both Rogers's friend and brother testified, they arrived at the scene after Rogers was already sitting handcuffed on the curb, and therefore, for that reason alone, they were not permitted to remove the vehicle from the scene. Consequently, arranging to have the vehicle towed when it was sitting in a traffic lane with no one immediately authorized to take the vehicle supports the reasonableness of Deputy Richards's actions because there was no other realistic alternative. *See id.*, ¶¶33, 35 ("The fact that the seizure did actually comply with the policies of the acting law enforcement agencies indicates that this impoundment was not an arbitrary decision but a reasonable exercise of discretion.").

¶28    Overall considering the factors, we conclude that the third step is satisfied and that Deputy Richards reasonably exercised his community caretaker function when he ordered that the vehicle Rogers was driving be towed from the scene.

¶29    Accordingly, the circuit court properly denied Rogers's motion to suppress, and we affirm.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

11