COURT OF APPEALS
DECISION
DATED AND FILED

September 13, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2021AP1726-CR**
**2021AP1727-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2017CF2445
2018CF1912

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ARRON CORNELIUS BOWENS,

DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Arron Cornelius Bowens appeals his judgments of conviction entered after he pled guilty to possession with the intent to deliver heroin

in an amount of less than three grams, and second-degree reckless homicide, both as a party to a crime. Bowens argues that the trial court[1] erred in denying two motions to suppress. Regarding the drug charge, he sought to suppress the evidence that was recovered from his vehicle after he was arrested on a warrant, on the grounds that there was no probable cause to search the vehicle; and relating to the reckless homicide charge, he sought suppression of identification evidence by an informant on the grounds that it was impermissibly suggestive. Upon review, we affirm.

## BACKGROUND

¶2 The charges against Bowens were initially brought in separate cases, but were subsequently joined. In the first case, officers from the Milwaukee Police Department (MPD), together with agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives, were investigating narcotics trafficking and individuals prohibited from possessing firearms. This task force received information from a confidential informant that Bowens was a heroin and cocaine dealer who was "always in possession of a firearm." The task force was also aware that Bowens had an open arrest warrant for allegedly shooting at his girlfriend, S.G., during an argument on January 17, 2017.

¶3 Additionally, the task force learned that Bowens had other criminal cases pending against him at that time for drug possession with the intent to deliver and being a felon in possession of a firearm. A bench warrant had recently been issued in one of those cases due to Bowens' failure to appear for his court hearing.

---

[1] Bowens' motion to suppress in the case relating to the drug charge was heard by the Honorable David L. Borowski. His motion to suppress in the case regarding the reckless homicide charge was heard by the Honorable Janet C. Protasiewicz, who also accepted Bowens' pleas.

2

Furthermore, Bowens had another court hearing scheduled in the near future, and officers suspected that due to the open felony warrant, Bowens would not appear for that hearing either.

¶4    During its investigation of Bowens, the task force discovered that Bowens was part owner of a silver Mercedes Benz. This information was obtained from another girlfriend of Bowens, Shamba Joseph. The vehicle was registered to Joseph at an address on North 40th Street in Milwaukee. In a police interview for an unrelated arrest, Joseph told officers that Bowens had "complete access" to the Mercedes. Officers subsequently observed Bowens driving the Mercedes, and the vehicle also received a night parking violation in front of a residence on North Holton Street, near the address for Bowens on file with the Department of Transportation and listed in his open criminal cases. Furthermore, the girlfriend Bowens had shot at, S.G., had told police that she had broken a window in his silver Mercedes during the argument between she and Bowens.

¶5    The task force obtained a search warrant for the North 40th Street residence on February 14, 2017. In addition to those premises, the warrant included any "vehicles associated with and accessible" to the North 40th Street residence.

¶6    The task force prepared to execute the search warrant and the arrest warrant for Bowens on February 17, 2017. Members of the task force assigned to surveillance observed Bowens driving the Mercedes with two other individuals in it. They saw Bowens park the vehicle and enter an auto shop on West Vliet Street in Milwaukee, with his passengers remaining in the vehicle.

¶7    Two of the task force members made contact with the passengers in the Mercedes. Those officers broke a window in the vehicle because the windows were so heavily tinted they could not see inside, and Bowens was known to be

3

armed. The officers observed two baggies by the gear shift which they suspected contained heroin and crack cocaine, and three cell phones were also recovered from that area. Three more cells phones were in the center console, another was in the front passenger seat, and two more were in the backseat. Additionally, the passenger in the backseat had a large quantity of cash in his lap. Both passengers were detained.

¶8 In the meantime, two of the task force members observed Bowens exit the auto shop from a side door and arrested him. The Mercedes was then towed from the auto shop parking lot and impounded.

¶9 The task force subsequently executed the search warrant for the North 40th Street residence. They discovered an additional eighteen grams of heroin; a digital scale and substances the officers believed were used as "cutting agents" for manufacturing heroin; several additional cell phones and more cash; and three firearms. They also found "[n]umerous paperwork identifiers" for Bowens.

¶10 Bowens moved to suppress the evidence recovered from the search of the Mercedes, arguing that while there was a valid arrest warrant for Bowens, the task force members did not have probable cause to search the vehicle because Bowens was actually taken into custody away from the vehicle. At a hearing held on the motion, the State presented evidence from the arrest and search, namely testimony from members of the task force. However, before the parties had the opportunity to argue the issue, the hearing had to be adjourned; it was scheduled for a subsequent date, at which time the trial court stated the proceedings would "pick up where we left off."

¶11     Nevertheless, before the hearing could be continued,[2] the trial court issued a written order granting Bowens' motion to suppress. The court determined that the task force did not have probable cause to search the Mercedes because Bowens was not in the vehicle when he was arrested, and that there was no other independent lawful basis for searching the vehicle.

¶12     The State filed a motion for the trial court to withdraw its decision, on the grounds that the motion hearing had been adjourned and the State had not had the opportunity to present its arguments against suppression. The trial court agreed, and after reviewing additional arguments presented by the parties, the court ultimately denied Bowens' motion to suppress, finding that based on all of the information the task force possessed at the time of Bowens' arrest, there was probable cause to search the Mercedes.

¶13     The other motion to suppress at issue in this appeal relates to the reckless homicide charge against Bowens. This charge stemmed from the death of D.J.K. from a heroin overdose in September 2016, at his home on Farwell Avenue in Milwaukee. In a forensic search of D.J.K.'s cell phone, officers discovered the name of D.J.K.'s drug dealer, J.Z., whom the police interviewed as a "cooperating witness." J.Z. told police that he obtained heroin from a supplier he knew as "A." and identified A. as Bowens from a photograph officers showed him. Additionally, on one of the cell phones recovered from Bowens' vehicle at the time of his arrest, there were "numerous drug[-]related texts" to and from J.Z.'s phone, including one just days before D.J.K. died.

---

[2] It appears that the motion hearing was adjourned again due to Bowens filing a *pro se* interlocutory appeal with this court, although he was represented by counsel at the time.

¶14    Bowens filed a motion to suppress J.Z.'s identification of him on the grounds that it was impermissibly suggestive. The trial court disagreed after reviewing the transcript from the police interview with J.Z., and denied Bowens' motion without a hearing.

¶15    Bowens subsequently entered into a plea agreement with the State. For the first case which included the drug charge, Bowens pled guilty to possession with intent to deliver heroin, three grams or less, as a party to a crime—one of eleven counts that he was charged with in that case. In the other case with the reckless homicide charge, Bowens pled guilty to second-degree reckless homicide as a party to a crime; this charge was amended from first-degree reckless homicide. The remaining counts were dismissed but read in at sentencing. Bowens was sentenced to a total of seventeen years of initial confinement and fifteen years of extended supervision. This appeal follows.

## DISCUSSION

¶16    The review of a trial court's decision on a motion to suppress presents a mixed question of fact and law. *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We will not reverse the trial court's findings of fact unless they are clearly erroneous; however, we review *de novo* the application of constitutional principles to those facts. *Id.*

*Motion to Suppress the Evidence from the Vehicle*

¶17    We first address Bowens' challenge of the trial court's denial of his motion to suppress the evidence discovered in his Mercedes when he was arrested. "The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect people from unreasonable searches and

6

seizures." ***State v. Young***, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729 (footnotes omitted). The standard remedy for an unconstitutional search is to exclude the evidence obtained in that search. *See* ***State v. Jackson***, 2016 WI 56, ¶46, 369 Wis. 2d 673, 882 N.W.2d 422.

¶18 A warrantless search is "presumptively unreasonable," and will pass constitutional muster "only if it falls under an exception to the warrant requirement[.]" ***State v. Tullberg***, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120. One such exception is the "inevitable discovery exception[.]" ***Jackson***, 369 Wis. 2d 673, ¶47. Under this exception, "evidence obtained during a search which is tainted by some illegal act may be admissible if the tainted evidence would have been inevitably discovered by lawful means." ***Id.*** (citations omitted). The burden is on the State to prove, by a preponderance of the evidence, that the evidence for which suppression is sought would have inevitably been discovered. ***Id.***, ¶66.

¶19 The State argues that Bowens' vehicle would have been subject to an inventory search upon being towed from the auto shop after Bowens was arrested pursuant to MPD policy, and thus would have inevitably been discovered.[3] An inventory search is "'a well-defined exception to the warrant requirement.'" ***State v. Clark***, 2003 WI App 121, ¶11, 265 Wis. 2d 557, 666 N.W.2d 112 (citation omitted). Nevertheless, it is still a search pursuant to the Fourth Amendment "and, therefore, subject to the reasonableness standard of that amendment." ***State v. Callaway***, 106 Wis. 2d 503, 508, 317 N.W.2d 428 (1982).

---

[3] We note that Bowens does not refute this argument in his reply; therefore, he could be deemed to have conceded this argument. *See* ***State v. Alexander***, 2005 WI App 231, ¶15, 287 Wis. 2d 645, 706 N.W.2d 191.

¶20 The determination of whether an inventory search is valid "involves a two-step process: (1) analysis of the reasonableness of the seizure of the car in the first instance; and (2) analysis of the reasonableness of the inventory search." *Clark*, 265 Wis. 2d 557, ¶11. At issue here is the first factor—the reasonableness of the seizure of the car.

¶21 At the time of Bowens' arrest at the auto shop, his Mercedes was parked in its parking lot, which is private property. The vehicle's registered owner, Joseph, was not present at the scene. Therefore, the Mercedes had to be towed from the auto shop upon Bowens' arrest regardless of its broken window, and thus was subject to an MPD inventory search.

¶22 Furthermore, in the context of a seizure analysis, it is clear that the officers' primary concern in seizing the Mercedes was safety, because Bowens was known to be armed, and the windows in the Mercedes were so heavily tinted the officers were unable to see inside where Bowens' passengers remained. As such, the principles for a *Terry* search are applicable; in particular, that a protective search for weapons in the absence of probable cause to arrest is valid "because it is unreasonable to deny a police officer the right 'to neutralize the threat of physical harm' when he [or she] possesses an articulable suspicion that an individual is armed and dangerous." *Michigan v. Long*, 463 U.S. 1032, 1034 (1983) (citing *Terry v. Ohio*, 392 U.S. 1, 24 (1968)). Based on their investigation of Bowens and the nature of the charges upon which his arrest warrant was based, the members of the task force had reasonable, articulated reasons for believing that there may have been firearms inside the Mercedes. *See id.*

¶23 "The touchstone of the Fourth Amendment is reasonableness." *Tullberg*, 359 Wis. 2d 421, ¶29 (citations omitted). Furthermore, the purpose of the

exclusionary rule is to "deter misconduct, rather than to punish it when it occurs." *Jackson*, 369 Wis. 2d 673, ¶92. Suppressing the evidence here, as sought by Bowens, would appear to "improperly apply exclusion in a purely punitive manner" for the officers' actions in securing the Mercedes. *Id.*

¶24 Therefore, based on these facts and circumstances, we conclude that seizing and towing the Mercedes from the auto shop was reasonable. *See Callaway*, 106 Wis. 2d at 511-12. Consequently, the vehicle would have properly been subjected to an inventory search pursuant to MPD policy, and the evidence challenged here would have been inevitably discovered.[4] *See Jackson*, 369 Wis. 2d 673, ¶47. Therefore, the trial court did not err in denying Bowens' motion to suppress that evidence. *See Eason*, 245 Wis. 2d 206, ¶9.

*Motion to Suppress Identification*

¶25 We next address Bowens' challenge to the trial court's denial of his motion to suppress the identification by J.Z. on the grounds that it was impermissibly suggestive and therefore unreliable. During an interview of J.Z. in conjunction with an investigation into the overdose death of D.J.K., members from the task force showed J.Z. a picture of Bowens, who identified Bowens as his heroin supplier. This type of identification is referred to as a "showup," a procedure "whereby a lone suspect is presented by police to a witness or victim of a crime so that the witness or victim may identify the person as the perpetrator." *See State v. Kaelin*, 196 Wis. 2d 1, 9, 538 N.W.2d 538 (Ct. App. 1995). A challenge to a showup

---

[4] We further note that the search warrant for the premises on North 40th Street obtained by the task force likely would have included the Mercedes, had it been present at that residence at the time that warrant was executed, because that warrant included "vehicles associated with and accessible" to those premises; the Mercedes was registered to Joseph, who appeared to reside at that address.

implicates the right of due process, which presents a constitutional question that this court reviews *de novo*. ***Id.*** at 9-10.

¶26 Showups, however, are "not per se impermissibly suggestive." ***State v. Roberson***, 2019 WI 102, ¶32, 389 Wis. 2d 190, 935 N.W.2d 813 (citations omitted). Rather, a two-part test is to be applied to make this determination. First, the defendant "'bears the initial burden of demonstrating that a showup was impermissibly suggestive.'" ***Id.***, ¶4 (citations omitted). To meet this initial burden, the defendant must "show that the method law enforcement chose to employ to identify a suspect as the perpetrator was 'an unnecessarily suggestive identification procedure,' such that there was a very substantial likelihood of misidentification." *See **id.***, ¶27 (citation omitted). If the defendant satisfies this initial burden, the burden then shifts to the State to prove that "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." ***Id.***, ¶4 (citations omitted).

¶27 Members of the task force interviewed J.Z. twice regarding D.J.K.'s death. In the first interview, the officers reviewed text messages with J.Z. that were retrieved from his cell phone. There were texts from D.J.K. regarding drug transactions that were sent a few days prior to his death. Additionally, there were texts from another number during that time frame regarding obtaining heroin, which J.Z. identified as his supplier A.'s number. J.Z. stated that he remembered that it was A.'s number because of the sequence of the digits. That number corresponds with one of the cell phones seized from Bowens.

¶28 J.Z. then identified A. as Bowens from a photobook shown to him by the officers. At that time, J.Z. stated that he had only seen A. "once or twice." During the second interview with officers, however, J.Z. admitted that he had seen

10

A. "hundreds" of times for drug transactions and knew exactly who he was from the picture, but had hesitated to identify him out of fear for the safety of his family.

¶29     Under these circumstances, we conclude that Bowens has failed to meet his burden of showing that there was a very substantial likelihood of misidentification from the officers showing J.Z. the picture of Bowens. The officers had already demonstrated a connection between J.Z. and Bowens through the text messages retrieved from J.Z.'s cell phone. Furthermore, J.Z. eventually admitted to being able to immediately identify Bowens as his drug supplier, but was fearful of making the identification. We conclude that this establishes that there was little chance of misidentification in J.Z.'s identification of Bowens. *See id.*

¶30     Therefore, both of Bowens' motions to suppress fail and, as a result, the trial court properly denied them. *See Eason*, 245 Wis. 2d 206, ¶9. Accordingly, we affirm.

> *By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11